# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ETHELYN ROSS, Individually and as Mother and Independent Administrator of the Estate of DIAMOND ROSS, deceased, | § § § § § | Civil Action No. _____ |
| Plaintiff, | § § | |
| v. | § § § | JURY DEMANDED |
| CITY OF DALLAS POLICE DEPARTMENT, CITY OF DALLAS FIRE RESCUE DEPARTMENT, LARRY MOODY, Individually and as an agent and/or employee of CITY OF DALLAS POLICE DEPARTMENT, WILLIAM ORTEGA, Individually and as an agent and/or employee of CITY OF DALLAS POLICE DEPARTMENT, JOHN AND OR JANE DOES Individually and as an agent and/or employee of DALLAS CITY MARSHALS OFFICE, JOHN  AND OR JANE DOES Individually and as an agent and/or employee of CITY OF DALLAS FIRE AND RESCUE DEPARTMENT | § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff ETHELYN ROSS, Individually as the surviving mother and Independent Administrator of the Estate of Diamond Ross, complaining of Defendants the City of Dallas, the City of Dallas Police Department, City of Dallas Fire Rescue Department, Dallas City Marshal's Office, Larry Moody, and William Ortega (collectively, "Defendants") and for cause would show the Honorable Court as follows:

## INDEX OF COUNTS

**Count I**- 42 U.S.C. § 1983 (Larry Moody and William Ortega)

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                        1

**Count II**- Willful and Wanton—Survival (Larry Moody and William Ortega)

**Count III**- Willful and Wanton—Wrongful Death (Larry Moody and William Ortega)

**Count IV**- Negligence (Larry Moody and William Ortega)

**Count V**- Negligence (City of Dallas)

**Count VI**- 42 U.S.C. §§ 1983 and 1988/Monell Policy Claim (City of Dallas)

**Count VII**- Violations of the Americans with Disabilities Act (ADA) Section 504 of the Rehabilitation Act (City of Dallas)

## I.
## NATURE OF THE ACTION

1.  This is an action brought against the Defendants relating to their failure to provide medical attention to Diamond Ross ("Ross"), which resulted in her wrongful death. Acting under the color of law, Defendants acts and omissions violated Ross' individuals rights under the Eight Amendment of United States Constitution and, consequently, her civil rights. Plaintiff brings claims under 42 U.S.C. § 1983 ("Section 1983") and Texas common and statutory law.

2.  Plaintiff alleges that Dallas Chief of Police Renee Hall ("Chief Hall") is, and was at all relevant times mentioned, the final policymaker for the Dallas Police Department, with the authority for setting policies, including training of the Dallas Police Officers. Chief Hall had a duty, but failed to implement and enforce such policies, practices, and procedures for the DPD that respected Ross' constitutional rights.

3.  Similarly, Plaintiff alleges that former Dallas Fire Rescue Chief David Coatney ("Chief Coatney") is, and was at all relevant times mentioned, the final policymaker for the Dallas Fire Rescue Department, with the authority for setting policies, including training of the Dallas Fire Rescue employees and paramedics. Chief Coatney had a duty, but failed to implement and enforce such policies, practices, and procedures for the DFR that respected Ross' constitutional rights.

4.  Chief Hall's, Chief Coatney's, and their respective departments' failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, caused Ross to experience unwarranted and excruciating physical and mental anguish before her ultimate death. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks compensation for her respective damages.

## II.
## PARTIES

5.  Plaintiff Ethelyn Ross is a citizen of the United States and is a resident of Dallas, Dallas County, Texas.

6.  The City of Dallas (the "City") is, and was at all relevant times mentioned, a municipality duly organized and existing under the laws of Texas. The Dallas Police Department ("DPD"), Dallas City Marshal's Office ("Marshals"), and Fire and Rescue Department ("DFR") are official subdivisions of the City. All individuals employed by the DPD, Marshals, and DFR are employees of the City.

7.  Further, the City is, and was at all times mentioned, engaged in: owning, operating, maintaining, managing and doing business as the DPD, Marshals and DFR; and the business of public safety for the residents of Dallas, Dallas County. All of the acts and omissions complained of in this Complaint by Plaintiff against Defendants Moody and Ortega were done and performed by them individually and/or in their capacity as agents, servants and/or employees of the City and/or the DPD, and at all relevant times they acted under the color of law. Moreover, the City and the policymaker ratified all of the acts of Defendants Moody and Ortega for which this complaint is made.

8.  The City of Dallas operates DPD, the Marshals, and DFR. The City of Dallas funds and operates DPD, the Marshals and DFR, which along with the Dallas City Council, and the Dallas

City Manager T.C. Broadnax, then Dallas Mayor Rawlings and current Dallas Mayor Johnson, DPD Chief Hall, DFR Chief Artis, and Marshal's Chief Deputy Hansen are responsible for the implementation for their departments' budgets, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The DPD, the Marshals, and DFR are also responsible for preventative, investigative, and enforcement services for all citizens of The City of Dallas.

9.   The City of Dallas may be served with citation herein by and through its agent for service of process, City Manager TC Broadnax, at 1500 Marilla 6A South, Dallas, Texas 75201.

10. Upon information and belief, Defendant Larry Moody ("Moody") is a resident of Forney, Texas. At all relevant times, Moody was acting under color of law, that is, under the color of the statutes, ordinances, regulations, policies, customs and usages of the City. Moody is being sued in his individual capacity and his official capacity as an employee of the DPD. Moody may be served at the Dallas Police Department, 1400 S. Lamar S. Lamar St. FL 6 Dallas, Texas 75215 or wherever he may be found.

11. Upon information and belief, Defendant William Ortega ("Ortega") is a resident of Dallas, Texas. At all relevant times, Ortega was acting under color of law, that is, under the color of the statutes, ordinances, regulations, policies, customs and usages of Defendant City. Ortega is being sued in his individual capacity and his official capacity as an employee of the DPD. Moody may be served at the Dallas Police Department, 1400 S. Lamar S. Lamar St. FL 6 Dallas, Texas 75215 or wherever he may be found.

12. The specific identity of Defendant John or Jane Does ("Does") are currently unknown to Plaintiff. Accordingly, Plaintiff sues said Defendants by fictious names.  Plaintiff reserves the right to seek leave of the Court to amend the Complaint to include the names, identities, and

capacities of the Does together with the proper charging allegations against them once the true names, identities or capacities of said Defendants is determined.  Upon information and belief, Does assisted in violations of 43 U.S.C. § 1983 and are liable for the following causes of action: negligence, violation of the Survival Statute, and wrongful death.

### III.
### JURISDICTION AND VENUE

13. This Court has jurisdiction over the 42 U.S.C. §§ 1983 and 1988 claims raised in this Complaint, pursuant to 28 U.S.C. §§ 1331 and 1343(3). Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas and seeks recovery under the Wrongful Death and Survival Statutes of the State of Texas as allowed by law.

14. Venue is appropriate in the Northern District of Texas under 28 U.S.C. § 1391 because Defendants reside, and the acts complained of arose, in the Northern District of Texas.

15. The amount of controversy exceeds $75,000 exclusive of interest and costs.

### IV.
### FACTUAL ALLEGATIONS

16.  Plaintiffs incorporate and reallege herein by reference paragraphs 1 through 15, inclusive, as though set forth fully herein.

**A.     ARREST OF ROSS**

17. On or about August 18, 2018, DPD Officers Moody and Ortega responded to a 911 call regarding a domestic disturbance in South Dallas. Upon arriving on the scene, Moody and Ortega found Ross to be incoherent and she was in desperate need of medical attention and treatment.

18. DFR paramedics arrived on the scene and did not provide Ross with proper medical attention or treatment. DPD body camera footage shows Ross requesting water and complaining of shortness of breath.[1] Ross can be heard on DPD dash camera footage stating "I can't breathe."

19. A DPD officer is also heard on the body camera footage stating "we see her [Ross] all the time at the QT…every time I see her [Ross] she is high on wet."[2]



See Exhibit A.

20. Despite Ross' desperate pleas for medical attention, her being unresponsive, and a DPD officer knowing that Ross was likely under the influence of illegal drugs, DFR improperly cleared

---

[1] The DPD body camera footage depicting Ross on August 18, 2018 is publically available on the DPD's official YouTube page at the following urls: https://www.youtube.com/watch?v=cy1EvUwtOu8; https://www.youtube.com/watch?v=y9gPYfmwJoM; https://www.youtube.com/watch?v=ryU02v7Bsqk; and https://www.youtube.com/watch?v=GJvzPLgX2zg.
[2] Id.

Ross for transport to the City of Dallas Lew Sterrett Justice Center ("Detention Facility") rather than transporting Ross directly to a hospital emergency facility.

21. Officers Moody and Ortega placed Ross into custody for outstanding city warrants and transported her to the Detention Facility, which led to her wrongful death.

### B.  IMPROPER TRANSPORT OF ROSS

22. During the improper transport of Ross to the Detention Facility, DPD dash camera footage shows Ross gasping for air and her partial loss of consciousness. The DPD dash camera footage also reveals that Moody and Ortega failed to place Ross in a seatbelt before transporting her to the Detention Facility, which is against DPD policy.

23. After arriving at the Detention Facility, Ross is unresponsive and appears to have loss all consciousness. DPD officers are heard on DPD dash camera footage asking Ross to wake up as they try to determine if she was still breathing.



24. Due to Ross' loss of consciousness, DPD officers' Ortega and Moody removed Ross from their patrol car and laid her on the pavement. Rather than seek immediate medical attention or transport Ross to an emergency medical facility, Ortega and Moody drag an unresponsive Ross into the Detention Facility.

25. Ross, who was handcuffed behind her back, was dragged through the Detention Facility until she was eventually placed face-first into a holding cell like an animal before being flipped over.



Statement From The Dallas Police Department Concerning Diamond S. Ross - Part 3 Detention Center

28,643 views • Nov 6, 2019                    👍 LIKE      👎 DISLIKE     ↗ SHARE    ☰+ SAVE    •••

Dallas Police Department
5.11K subscribers                                                                SUBSCRIBE

**C. ROSS' DEATH IN POLICE CUSTODY**

26. As Ross lay in the holding cell unconscious, DPD officers and Marshals failed to check Ross for a pulse or life. Instead, they continued to ignore signs that Ross was in desperate need of medical attention.

27. Video footage from the Detention Facility shows DPD officers place a handcuffed Ross in a wheelchair as her head violently snaps back due to her being unresponsive.



Statement From The Dallas Police Department Concerning Diamond S. Ross - Part 3 Detention Center
28,643 views • Nov 6, 2019

Dallas Police Department
5.11K subscribers

28. After being placed in the wheelchair, Ross was left alone in a cell unconscious.

29. Despite their being  multiple DPD officers and Marshals stationed near her holding cell, DPD officers and Marshals continued to ignore Ross and failed to provide any medical aide to save her life.

30. Approximately six (6) minutes passes before a DPD officer or Marshal attempted to check on whether Ross was dead or alive.

31. A DPD officer lifted a handcuffed Ross's head and, again, it violently snaped back over the back of the wheelchair, demonstrating that Ross was still unresponsive and unconscious. Another DPD officer placed his hand over Ross' mouth to check on her breathing but did not attempt to provided CPR or any other medical assistance.



32. Ross remained unconscious and slumped in the wheelchair in the middle of the Detention Facility while officers attend to another handcuffed man.

33. According to video footage from the Detention Facility, DFR paramedics eventually arrive approximately twelve (12) minutes after Ross was dragged into the Detention Facility handcuffed and unresponsive. Ross was transported to Baylor Hospital where she was declared dead.

34. Ross' death in police custody was avoidable and she would be alive today if Defendants provided immediate medical treatment.

35. The wrongful and inexcusable death of Ross in police custody is a violation of her individuals rights under the Eight Amendment of the United States Constitution and, consequently, in violation of her civil rights.

36. Defendants are liable because they directly violated Ross' constitutional rights and acted under color of law.

### D. IMPACT OF ROSS' DEATH IN POLICE CUSTODY

37. Because Ross died in police custody, DPD conducted an investigation. The internal affairs unit found officers Ortega and Moody gave improper transport and failed to provide Ross medical treatment.[3]

38. On November 7, 2019, DPD release a statement admitting officers Moody and Ortega failed to aide Ross during her medical emergency while in police custody.[4] Specifically, DPD stated "the arresting officer failed to secure a prisoner with a seat belt during transport and failed to obtain medical treatment for a prisoner when it became apparent that the individual was unresponsive. To that end, the arresting officer in this case was disciplined for his behavior during this incident."[5]

39. In response to DPD's investigation concerning Ross, the City of Dallas recommended medical changes to the intake procedure at all Dallas City Detention Centers ("CDC"). On December 20, 2019, assistant city manager Jon Fortune submitted a memorandum titled "*Addition of Medical Evaluation and Monitoring at the City Detention Center*" to the Dallas City Council outlining the new procedures ("Memo").[6]

---

[3] Exhibit B, a true and correct copy of the November 7, 2019 Dallas Police Department statement concerning Diamond S. Ross.
[4] *Id*.
[5] *Id*.
[6] Exhibit C, a true and correct copy of the December 20, 2019 memorandum by City of Dallas Assistant City Manager titled "*Addition of Medical Evaluation and Monitoring at the City Detention Center.*"

40. The Memo states that a DFR paramedic must be on-site at CDC at all times "to evaluate individuals as they are brought in for booking as well as to be available for medical emergencies while they are in custody"[7] and that "DFR has enhanced their field evaluation protocols to better determine those patients that should be transported directly to a hospital emergency facility rather than being taken to the CDC."[8]

41. In addition to the new City of Dallas intake procedures, City of Dallas Mayor Eric Johnson issued a statement condemning the treatment and death of Ross in police custody. According to the Dallas Morning News, Mayor Johnson stated "I am deeply disturbed by these videos. The way in which Ms. Ross was handled was unacceptable. I expect to be briefed soon by Chief Hall and city staff on a plan that will ensure accountability and proper treatment of those in police custody."[9]

42. Based on the DPD's internal investigation, City of Dallas new intake procedures, and Mayor Johnson's statements, it is clear that Defendants are and have admitted liability for directly violating Ross' constitutional and civil rights. Most importantly, Ross would be alive today had Defendants simply provided her with medical treatment while in police custody.

### COUNT I - 42 U.S.C. § 1983 (Moody and Ortega)

Plaintiff re-alleges Paragraphs 1-42 of the Complaint.

43. On August 18, 2018, Defendants Moody and Ortega acted under color of law.

44. In the events alleged above, Defendants Moody and Ortega acted contrary to law, and intentionally, willfully, wantonly and unreasonably deprived Ross of her rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

[7] *Id.*
[8] *Id.*
[9] Exhibit D, a true and correct copy of the November 6, 2019 Dallas Morning News article titled "*Dallas police probe shows 'improper' conduct but no criminal charges after woman dies in custody*."

**PLAINTIFF'S ORIGINAL COMPLAINT**                    12

45. The above-described acts and omissions by Defendants Moody and Ortega demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of Ross.

46. At various points in time, Ross did not receive adequate medical attention while in DPD's custody.

47. The DPD, including but not limited to Moody and Ortega, were willful, wanton, reckless in exhibiting a conscious disregard for the safety of Ross in failing to keep her in a safe and suitable environment where she could be kept free from injury, harm and death.

48. As a direct and proximate result of the foregoing, Defendants Moody and Ortega, individually and as agents and/or employees of the City and DPD, deprived Ross of her rights and privileges as a citizen of the United States, and caused Ross to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

49. The claims and causes of action for injuries to the health, reputation and person sustained by Ross are brought in this action pursuant to the Survival Act Texas Civil Practice and Texas Practice and Remedies Code § 71.021.

50. The claims and causes of action for the wrongful death of Ross are brought by her mother Ethelyn Ross on behalf of herself and all rightful heirs, pursuant to Texas Civil Practice and Remedies Code §§ 71.002-004.

### Count II – Willful and Wanton — Survival (Moody and Ortega)

Plaintiff re-alleges paragraphs 1-50 of the Complaint.

51. On August 18, 2018, Defendants Moody and Ortega  acted under the color of law.

52. In the events alleged above, Defendants Moody and Ortega acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Ross of her rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

53. The above-described acts and omissions by Defendants Moody and Ortega demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of Ross.

54. At various points in time, Ross was not adequately monitored nor provided adequate medical attention while in custody.

55. The City's personnel, including but not limited to Moody and Ortega, were willful, wanton and recklessly exhibited a conscious disregard for the safety of Ross in failing to keep her free from injury, harm, and death.

56. The City's personnel, including but not limited to Moody and Ortega, were willful, wanton, and reckless, in exhibiting a conscious disregard for the safety of Ross in failing to keep her in a safe and suitable environment where she could be kept free from injury, harm, and death.

57. As a direct and proximate result of the foregoing, Defendants Moody and Ortega, individually and as agents and/or employees of the City and DPD, deprived Ross of her rights and privileges as a citizen of the United States and caused Ross to suffer injury and death.

58. Consequently, Ross suffered damages, including without limitation, pain and mental anguish as well as medical and funeral expenses, which Plaintiff seeks to recover in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

59. The claims and causes of action for injuries to the health, reputation, and person sustained by Ross are brought in this action pursuant to the Survival Act, Texas Civil Practices and Remedies Code § 71.021.

**Count III – Willful and Wanton—Wrongful Death (Moody and Ortega)**

Plaintiff re-alleges paragraphs 1-59 of the Complaint.

60. On August 18, 2018, Defendants Moody and Ortega acted under color of law.

61. In the events alleged above, Defendants Moody and Ortega acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Ross of her rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

62. The above-described acts and omissions by Defendants Moody and Ortega demonstrate a deliberate indifference to and conscious disregard for the constitutional rights and safety of Ross.

63. At various points in time, Ross was not adequately monitored while in custody.

64. The City's personnel, including but not limited to Defendants Moody and Ortega, were willful, wanton, and reckless in failing to provide adequate monitoring of Ross to keep her safe and secure.

65. On or about August 18, 2018, the City's personnel, including but not limited to Defendants Moody and Ortega, were willful, wanton, and reckless in exhibiting a conscious disregard for the safety of Ross in failing to keep her free from injury harm and death.

66. The City's personnel, including but not limited to Defendants Moody and Ortega, were willful, wanton, and reckless exhibiting a conscious disregard for the safety of Ross in failing to keep her in a safe and suitable environment where she could be kept free from injury, harm, and death.

67. The City's personnel, including but not limited to Moody and Ortega, were willful, wanton, and reckless in not providing adequate medical care and attention to Ross when she begged for water, explicitly proclaimed that she could not breathe, and when she was found unresponsive in the back of a DPD patrol car.

68. As a direct and proximate result of the foregoing, Defendants Moody and Ortega, individually and as agents and/or employees of the City of Dallas and DPD, deprived Ross of her rights and privileges as a citizen of the United States, and caused Ross to suffer injury and death.

69. As a result of Ross' untimely death, Plaintiff has suffered pecuniary loss. Plaintiff has also suffered, and will likely continue to suffer, mental anguish as a result of Ross' death. For these losses, Plaintiff seeks damages in a sum in excess of the jurisdictional limits of the court.

70. The claims and causes of action for the wrongful death of Ross are brought by her mother Ethelyn Ross on behalf of herself and all rightful heirs, pursuant to Texas Civil Practice and Remedies Code §§ 71.002-004.

### Count IV – Negligence (Moody and Ortega)

Plaintiff re-alleges paragraphs 1-70 of the Complaint.

71. On August 18, 2018, while acting under color of law, the City of Dallas personnel, including but not limited to Moody and Ortega, owed Ross a duty of care.

72. In the events alleged above, the City of Dallas personnel, including but not limited to Defendants Moody and Ortega, breached their duty by acting contrary to law and intentionally, willfully, wantonly, and unreasonably depriving Ross of her rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

73. Specifically, the City's personnel breached their duty to Ross and exhibited a deliberate indifference to and conscious disregard for her constitutional rights and safety by, among other things:

   a.  Failing to adequately monitor Ross while in custody, in order to keep her safe and secure;

   b.  Failing to keep Ross free from injury, harm, and death;

c. Not providing Ross with adequate medical care and attention when she begged for water, explicitly proclaimed that she could not breathe, and when she was found unresponsive in the back of a DPD patrol car; and

d. Failing to attempt to transport Ross to a medical facility to be seen by a physician.

74. Defendant, the City of Dallas, by and through its agents and/or employees, Moody and Ortega, deprived Ross of her rights guaranteed by the United States Constitution.

75. As a direct and proximate result of the foregoing, Defendants Moody and Ortega, individually and as an agent and/or employee of the City of Dallas and DPD, deprived Ross of her rights and privileges as a citizen of the United States, and caused Ross to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

76. The claims and causes of action for injuries to the health, reputation and person sustained by Ross are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code section 71.021, Survival Causes of Action.

77. The claims and causes of action for the wrongful death of Ross are brought by her mother Ethelyn Ross on behalf of herself and all rightful heirs, pursuant to the Texas Civil Practice and Remedies Code §§ 71.002-004.

**Count VI – Negligence (The City)**

Plaintiff re-alleges paragraphs 1-77 of the Complaint.

78. Defendant Moody was an agent and/or employee of the City of Dallas through his employment at the Dallas Police Department.

79. Defendant William Ortega was an agent and/or employee of the City of Dallas through his employment at the Dallas Police Department

80. In the events alleged above, the City, by and through its agents and/or employees, Defendant Moody, Defendant Ortega, and others, acted contrary to law, and negligently, intentionally and unreasonably deprived Ross of her rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983 in a willful and wanton fashion.

81. The above described acts and omissions by Defendants demonstrated a negligent and even deliberate indifference to and conscious disregard for Ross' constitutional rights and safety.

82. The City's personnel were inadequately trained on the procedures for behavioral observations of, including state of consciousness and mental status of inmates, in violation of 37 Texas Administrative Code part 9, Section 273.4, Chapter 351 of the Texas Local Government Code, Chapter 511 of the Texas Government Code, and 37 Texas Administrative Code Part 9, section 297.8.

83. Furthermore, the City failed to adopt constitutionally appropriate policies and customs to ensure the safe operation of the Marshal's jail, in violation of 37 Texas Administrative Code Part 9, Section 273.4, Chapter 351 of the Texas Local Government Code, Chapter 511 of the Texas Government Code, 37 Texas Administrative Code Part 9, section 297.8, and Ross' clearly established constitutional rights.

84. Because the City's agents and/or employees, including Defendant Moody, Defendant Ortega, and others, violated Ross' constitutional rights, Ross suffered substantial injuries, damages, and ultimately death.

85. At various points in time, Ross was not adequately monitored while in custody.

86. The City of Dallas' personnel, including Defendant Larry Moody, Defendant William Ortega and others, were negligent, willful, wanton, and reckless in failing to provide adequate monitoring of Ross to keep her safe and secure.

87. The City of Dallas' personnel, including Defendant Moody, Defendant Ortega, and others, were negligent, willful, wanton, and reckless in exhibiting a conscious disregard for the safety of Ross by failing to keep her in a safe and suitable environment where she could be kept free from injury, harm, and death.

88. The City's personnel, including Defendant Moody, Defendant Ortega, and others, were negligent, willful, wanton, and reckless in not providing adequate medical care and attention to Ross. As discussed, Ross explicitly informed officers that she could not breathe, begged for water, and a DPD offer acknowledged that she was unresponsive.

89. The City, by and through its agents and/or employees, Defendant Moody, Defendant Ortega, and others deprived Ross of her rights guaranteed by the United States Constitution and federal statutes.

90. As a direct and proximate result of the foregoing, the City of Dallas, by and through its agents and or employees, including Defendant Larry Moody, Defendant William Ortega, and others, deprived Ross of her rights and privileges, and caused Ross to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount to be proven at trial.

91. The claims and causes of action for injuries to the health, reputation and person sustained by Ross are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code §§ 71.021.

92. The claims and causes of action for the wrongful death of Ross are brought be her mother Ethelyn Ross on behalf of herself and all rightful heirs, pursuant to Texas Civil Practice and Remedies Code §§ 71.002-004.

### Count VII – 42 U.S.C. §§ 1983 and 1988/*Monell* Policy Claim (The City)

Plaintiff re-alleges paragraphs 1 through 92 of the Complaint.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                 19

93. The actions of Defendants, which resulted in Ross' death, were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices and/or customs of the Defendant, the City, its mayor, its city manager, its Personnel Division, DPD, the Marshals, and DFR, as well as their respective agents and/or their officials.

94. The City, acting at the level of official policy, practice, and custom, with callous, conscious, unreasonable and deliberate indifference to Ross' constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed. At all times material to this Complaint the City of Dallas, DPD, the Marshals, DFR, the mayor, city manager, city council, and their respective Personnel Divisions, their agents and/or officials had interrelated *de facto* policies, and customs which include, *inter alia*:

  a.  proper evaluation and treatment for Ross' acute medical condition;

  b.  the proper reporting, and notice of the acute medical condition of Ross as required by Texas jail standards;

  c.  confinement conditions that ensure safe, humane, and decent conditions, including providing reasonable medical care to those confined; and

  d.  denial of medical treatment.

95.  Defendants' actions further violated the rights of pretrial detainees, including Ross, through the Defendants policies and customs such as:

  a.  policy of treating all persons who are suffering from an overdose;

  b.  the failure to have a separate constitutionally appropriate policy for the care of pretrial detainees who are suffering from an overdose;

  c.  the failure to have a policy of training officers and other personnel of the City of Dallas to recognize, care for, and treat pretrial detainees suffering from a drug overdose;

       d.      the failure to adequately and effectively train custodial staff with regard to pretrial detainees who are suffering from an overdose;

       e.      not having DPD officers, Dallas Fire and Rescue responders and Dallas City Marshals arrange for medical transport when immediate transfer to a hospital was necessary;

       d.      dragging Ross' lifeless body into the City's jail for booking when immediate transfer to a hospital was necessary;

       e.      failing to have a physician or other appropriately trained medical provider address Ross' acute medical condition;

       f.      failing to timely transport Ross to the hospital to obtain appropriate medical care for her acute medical condition.

       g.      failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control corrections officials;

       h.      failing and refusing to correct, discipline, and follow up on deficiencies noted in care, treatment, and/or supervision of detainees; and/or

       i.      Possessing knowledge of deficiencies in the policies, practices, customs, and procedures concerning detainees, and approving and/or deliberately turning a blind eye to those deficiencies.

96. All of the policies set forth above were adopted, implemented, supplemented, reinforced, promulgated, and effected, as a further matter of custom, practice, and policy. Said policies were also a driving force in Ross' death by means and failure of the City to hire, train, discipline and supervise DPD officers, Dallas City Marshal's Officers, and Dallas Fire and Rescue Department responders, in accordance with the following principles:

a.   That there be an immediate, urgent, predictable, consistent and mandatory response to any sign or evidence of a recognizable and significant likelihood of overdose by any prisoner at that jail;

b.   That when as here, there is an immediate and recognizable likelihood of suicide or actual steps taken, immediate and urgent steps must be taken to prevent the death of a detainee experiencing an overdose;

c.   That threats must be addressed consistently and predictably so that none could be ignored, disregarded, or responded to in a delayed or deleterious manner by City of Dallas staff, including but not limited to Defendants LARRY MOODY AND WILLIAM ORTEGA.

97. In particular, correctional officers and other employees are not properly trained in how to take, screen, identify, refer and/or handle detainees with mental health issues, including persons with suicidal tendencies or ideations to avoid exacerbation of their symptoms and to manage and control the mental and physical health of detainees and to prevent them from dying due to an overdose.

98. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and were unreasonable; and encouraged, *inter alia*, the failure to adequately observe detainees to identify problematic behavior that indicates an overdose, the failure to adequately screen detainees for and overdose, the failure to provide preventative health care to avoid death due to overdose, and the failure to provide adequate resuscitation equipment and training.

99. Further the constitutional violations and damages to Ross as described herein were directly and proximately caused by: the unofficial and/or official, tacit and/or expressed; and otherwise unconstitutional policies of authorized policy makers of the Defendants, who deliberately ignored

subjecting detainees to unreasonable risk of harm, deliberately ignored violations of appropriate intake and screening procedures, and deliberately failed to supervise and control correctional officers so as to prevent violations of detainees' rights.

100.     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged the Defendants to commit the aforesaid acts against Ross and therefore acted as direct and proximate causes of said constitutional violations, and resulting injuries.

101.     The foregoing policies, practices, customs and omissions, maintained by Defendant City of Dallas violated Ross' constitutional rights.

## VIII - Violations of the Americans with Disabilities Act ("ADA") Section 504 of the Rehabilitation Act (The City)

Plaintiff re-alleges Paragraphs 1-101 of the Complaint.

102.     The City of Dallas violated Title II of the ADA (42 U.S.C. §§12131-12134, 12131(2), 12182) and Section 50 of the Rehabilitation Act (29 U.S.C. §794).

103.     Title II of the ADA applies to the City. Title II affirmatively requires that governmental agencies modify and accommodate their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities.

104.     Further, the City of Dallas has been, and is, a recipient of federal funds. Thus, Dallas must comply with Section 504's mandate. Section 504 requires that federal money recipients reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

105.     The City is a public entity and its police department qualifies as a program and service for purposes of Title II of the ADA section 504.

106.     The City violated Title II of the ADA and Section 504 by:

    a.   Failing and refusing to reasonably modify and accommodate police department operations and services for Ross, which would include ensuring safe transport to a medical facility for a person suffering from a disabling drug addiction, and educating and training officers in the care of a person experiencing a drug overdose. The City and its police department made none of these modifications and accommodations;

    b.   Failing and refusing to adopt a policy to protect the well-being of people like Diamond, persons with drug disorders in crisis situation, thus facilitating the City of Dallas, DPD, Marshal's and DFR's discriminatory treatment;

    c.   Discriminating against Diamond, as a person with a substance abuse disorder, in the provision of services by the City's police department in an apparent overdose crisis situation, on the basis of her disability, by not accommodating her disability; and

    d.   Failing to conduct a self-evaluation plan under the ADA and Section 504, and then failing to modify its programs and services to accommodate the needs of persons with mental illness, such as Aaron, when called upon to provide service in crisis situations.

144. As set forth in her Prayer for Relief, Plaintiff seek damages, as well as declaratory and injunctive relief, under the ADA and Section 504.

## DAMAGES

107.    Defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

108.    Plaintiff and Plaintiff's Decedent suffered compensatory, special, and punitive damages for the following:

      a.  Violation of Plaintiff's civil rights by Defendants Moody, Ortega, the City, DPD, the Marshals, and DFR;

      b.  Punitive damages for egregious acts and omissions of Defendants Moody, Ortega, the City of Dallas, DPD, D the Marshals, and DFR;

      c.  Plaintiff is entitled to attorney's fees for litigation of this matter; and

      d.  Plaintiff requests and is entitled to a trial by jury.

## PRAYER FOR RELIEF

Ethelyn Ross, as Mother and Personal Representative of the estate of Ross, deceased, prays that for judgment on her behalf and against all defendants jointly, severally and in solido, as follows:

      a.  Compensatory, special, and punitive damages;

      b.  Plaintiff seeks declaratory relief that Defendants violated Ross' rights under the U.S. Constitution, Title II of the ADA, Section 504 of the Rehabilitation Act, and Texas state law, as described above;

      c.  Plaintiff seeks to prevent Defendants from continuing their current policies, customs and procedures related mental health and substance abuse disorder responses and police interventions, as described above;

d.   The cost of this action and reasonable attorney fees as provided by 42 U.S.C. § 1983;

e.   Prejudgment and post-judgment interest as provided by law; and

f.   Such further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.