IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ETHELYN ROSS, Individually and as Mother and Independent Administrator of the Estate of DIAMOND ROSS, deceased, | § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | C.A. No. 3:20-cv-01690-E |
| CITY OF DALLAS, et al, | § § | |
| Defendants. | § § | |
| CLARENCE McNICKLES, | § § § | (consolidated from |
| Plaintiff, | § § | No. 3:20-cv-02095-E) |
| V. | § § | |
| CITY OF DALLAS, et al. | § § | |
| Defendants | § § § | |

**PLAINTIFFS' JOINT BRIEF IN OPPOSITION OF DEFENDANTS LARRY MOODY AND WILLIAM ORTEGA'S MOTION FOR  SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................1

II.  STATEMENT OF THE FACTS...........................................................2

   A.  DEFENDANTS ORTEGA AND MOODY DETAIN MS. ROSS WHILE
       SHE APPEARS UNWELL, GOES LIMP, AND  HAS DIFFICULTY
       COMMUNICATING WITH THEM .................................................2

   B.  MS. ROSS CONTINUES TO APPEAR UNWELL, STATES SHE CANNOT
       BREATHE, AND REQUESTS WATER .....................................3

   C.  MS. ROSS RAPIDLY DECLINES AND BECOMES UNRESPONSIVE;
       DEFENDANTS ORTEGA AND MOODY DO NOT SUMMON MEDICAL
       AID .......................................................................................4

   D.  DISPUTED FACT AS TO WHEN MS. ROSS STOPPED BREATHING IN
       DEFENDANTS' CUSTODY .....................................................6

   E.  DEFENDANTS' TRAINING AND PRIOR EXPERIENCE ............7

III. THE PURPOSE OF SUMMARY JUDGMENT ............................8

IV.  ARGUMENT AND AUTHORITIES ...........................................9

   A.  BY FAILING TO REQUEST MEDICAL CARE WHILE MS. ROSS WAS
       UNRESPONSIVE AND POSSIBLY NOT BREATHING, DEFENDANTS
       VIOLATED MS. ROSS' CONSTITUTIONAL RIGHT TO NOT HAVE HER
       SERIOUS MEDICAL NEEDS MET WITH DELIBERATE INDIFFERENCE.................9

     1.  Because Ms. Ross Was Unresponsive, Experienced a Rapid
        Decline, and Defendants Were Notified That She May Be
        Under the Influence of a Narcotics, Defendants Were Aware
        of Facts to Draw Inference of Substantial Risk of Serious Harm............10

     2.  Genuine Issue of Material Fact as to When Ms. Ross Stopped
        Breathing .........................................................................15

     3.  Defendant Ortega and Moody's Disregard to Ms. Ross'
        Requests for Water, Statements that She Could Not Breathe,
        and Failure to Summon Medical Care Demonstrate That They
        Acted With Deliberate Indifference .......................................17

     4.  Plaintiffs Are Not Required to Show that Defendants Ortega
        and Moody Subjectively Intended to Harm Ms. Ross ...............19

   B.  MS. ROSS' RIGHT TO MEDICAL TREATMENT WHILE IN CUSTODY WAS
       CLEARLY ESTABLISHED AT THE TIME OF THE INCIDENT ..................19

   C.  GENUINE ISSUE OF MATERIAL FACT AS TO THE EFFECT OF THE DELAY

PLAINTIFFS' JOINT BRIEF IN OPPOSITION OF DEFENDANTS LARRY MOODY AND WILLIAM
ORTEGA'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY –
Page ii

McNickles – Resp MSJ QI – fj09012117

IN MEDICAL TREATMENT......................................................................20

    d.  LEAVE TO AMEND ........................................................................20

V.    OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT
        EVIDENCE .....................................................................................20

VI.   CONCLUSION ................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Raso¸*
  183 F.3d 279 (3d Cir. 1999) ........................................................... 16, 22

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) .........................................................................16

*Brannan v. City of Mesquite, Tex.,*
  3:19-CV-1263-X, 2020 WL 7344125 at *1
  (N.D. Tex. Dec. 14, 2020)........................................... 10, 11, 15, 18, 20

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ...........................................................................9, 19

*Farmer v. Brennan*,
  511 U.S. 825 (1994) .........................................................................12

*Garza v. City of Donna*,
  922 F.3d 626 (5th Cir. 2019) ...........................................................19

*Herrin v. Treon¸*
  459 F. Supp. 2d 525 (N.D. Tex. 2006).......................................... 16, 22

*Hopkins v. Anday*a,
  958 F. 2d 881 (9th Cir. 1992) ..........................................................22

*Kelson v. Clark*,
  1 F.4th 411 (5th Cir. 2021)........................................ 8, 9, 11, 13, 17, 19

*Reeves v. Sanderson Plumbing Prods. Inc.*,
  530 U.S. 133 (2000) .........................................................................16

*Scott v. Henrich*,
  39 F.3d 912 (9th Cir.1994) ..............................................................22

*Sims v. City of Jasper*,
  2021 WL 2349350, at *7 (E.D. Tex. June 9, 2021) ...........................18

*Thomas v Galveston*,

800 F. Supp. 2d 826 (S.D. Tex. 2011)....................................................................11

*Thompson v. Upshur Cnty.*,
245 F.3d 447 (5th Cir. 2001) ................................................................... 9, 19, 20

*Tolan v. Cotton*,
572 U.S. 650 (2014). ..............................................................................................8

*United States v. Gonzalez*,
436 F.3d 560 (5th Cir. 2006) ...............................................................................12

## Statutes

42 U.S.C. §1983 ......................................................................................................1

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW, Plaintiff, Ethelyn Ross, Individually and as Mother and Independent Administrator of the Estate of Diamond Ross, Deceased, and Clarence McNickles, and file this Brief in Opposition to Defendants Larry Moody and William Ortega's Motion for Summary Judgment Based on Qualified Immunity and would respectfully show that the Motion should be denied for the following reasons:

## I.   INTRODUCTION

Plaintiffs Ethelyn Ross and Clarence McNickles brought separate lawsuits under 42 U.S.C. §1983 for the wrongful death of their daughter Diamond Ross. These suits were consolidated.

Plaintiffs' daughter was detained in her room on a misdemeanor arrest warrant following allegations from an intoxicated individual that she pushed out the cardboard surrounding a window air conditioner unit in the home. Ms. Ross was brought out of her room and transported to Dallas County detention center on a misdemeanor warrant. Ms. Ross was plainly unwell while interacting with law enforcement: Defendants were informed she was likely under the influence of narcotics, possibly PCP; she behaved erratically; was largely unresponsive to questions; and went limp while walking. She requested water numerous times and repeatedly stated that she could not breathe. By the time, Defendants Ortega and Moody arrived at the Dallas County detention center, Ms. Ross was completely unresponsive. Despite this, Defendants Ortega and Moody carried, dragged,

positioned, and dropped Ms. Ross' unresponsive body on hard surfaces as they brought her into the jail and ultimately put her in a holding cage. Throughout this process, Defendants Ortega and Moody were aware that she had not "woken up" or shown responsive signs. Eventually, Dallas Fire Rescue was summoned and Ms. Ross was rushed to the hospital. She was declared dead at the hospital.

While Defendants claim that they saw Ms. Ross breathing while at the detention center, the sole evidence of this is Defendants' testimony. Indeed, the substantial video footage of Ms. Ross at the Dallas County jail does not show her chest moving up and down or any signs of responsiveness. This, at a minimum, raises a genuine issue of material fact as to when Ms. Ross stopped breathing.

Even assuming *arguendo* Ms. Ross was breathing for some of the time she was at the detention center, a completely limp and unresponsive detainee needs medical attention and is at obvious risk of substantial harm without medical attention. A detainee, such as Ms. Ross, should not have to completely stop breathing before she warrants medical attention.

## II.   STATEMENT OF THE FACTS

### a. DEFENDANTS ORTEGA AND MOODY DETAIN MS. ROSS WHILE SHE APPEARS UNWELL, GOES LIMP, AND HAS DIFFICULTY COMMUNICATING WITH THEM

Defendants Ortega and Moody arrived in response to a disturbance. When they arrived at the address, Defendants Ortega and Moody spoke with Mr. Brown. Mr. Brown stated that Ms. Diamond Ross was staying at his home for about two

PLAINTIFFS' JOINT BRIEF IN OPPOSITION OF DEFENDANTS LARRY MOODY AND WILLIAM ORTEGA'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY –
Page 2 of 22

McNickles – Resp MSJ QI – fj09012117

weeks and had pushed out the cardboard surrounding a window unit air conditioner that evening. (Ex. A, Dep. William Ortega, Pl. App. 8–9, 21). She was described as having a room at the house. (*Id.* at 9). Defendants Ortega and Moody stated that Mr. Brown appeared intoxicated while speaking with them. (Defs. App., Internal Statement of Larry Moody 5).

Defendant Ortega and Moody entered the house and went to Ms. Ross' room to speak with her. Ms. Ross was reluctant to communicate and was behaving erratically: sitting and standing constantly. (Ex. A, Dep. William Ortega App. 10–12, 16). Defendants Ortega and Moody believed she was under the influence of a drug. (*Id.* at 17; Ex. B, Dep. Larry Moody App. 70, 74). Mr. Brown had also informed them that she was under the influence of a drug. (Defs. App. Aff. Larry Moody, 37).

Defendants Ortega and Moody decided to arrest Ms. Ross and had difficulty getting her into handcuffs, which resulted in Defendants pinning her down to get her into handcuffs. While moving to the car, Ms. Ross' body went limp and required Defendants to carry her to their vehicle

### b. Ms. Ross Continues to Appear Unwell, States She Cannot Breathe, and Requests Water

While she was in the back of the police vehicle, she moved around constantly and behaved erratically: appearing to be unwell. (Ex. A, Dep. William Ortega App. 23–24; Ex. B, Dep. Larry Moody App. 71, 76).

She stated that she could not breathe multiple times. (Defs. App. Ex. A-A: In-

Car Camera Video). She requested water. Defendants Moody and Ortega were able to but did not provide Ms. Ross with water. (Ex. A, Dep. William Ortega App. 26–27; Ex. B, Dep. Larry Moody App. 75),

### c. MS. ROSS RAPIDLY DECLINES AND BECOMES UNRESPONSIVE; DEFENDANTS ORTEGA AND MOODY DO NOT SUMMON MEDICAL AID

Defendants Ortega and Moody did not put a seat belt on Ms. Ross before transporting her. (Ex. A, Dep. William Ortega App. 24, 25). During the drive to the detention center, Ms. Ross experienced a rapid decline in her health and behavior. For most of the drive, she did not move or speak and appeared to drift in and out of consciousness. (Defs. App. Ex. A-A: In-Car Camera Video).

Upon arrival, Ms. Ross was completely unresponsive. (*Id.*). Defendants claimed they thought she was asleep. But, they were unable to get any response from her. (Ex. A, Dep. William Ortega App. 29, 30; Ex. B, Dep. Larry Moody App. 78). Defendant Ortega acknowledged that you can usually wake someone up who is asleep. (Ex. A, Dep. William Ortega 30; 31). When they arrived, she did not wake up at any point. (Ex. A, Dep. William Ortega App. 28–29). Defendant Ortega attempted to wake her up by talking to her and shaking her but received no response. (Ex. A, Dep. William Ortega App. 31–32; Ex. B, Dep. Larry Moody App. 78).

Defendants pulled her out of the vehicle and set her down on concrete outside of the detention center. She did not wake up. Both Moody and Ortega were aware that she did not wake up. (Ex. A, Dep. William Ortega App. 32–33; Ex. B, Dep. Larry Moody App. 79–80).

Defendants then carried her into the detention center. Again, she did not wake up or otherwise respond. (Ex. A, Dep. William Ortega App. 33; Ex. B, Dep. Larry Moody App. 84–85).

Defendants then dragged Ms. Ross along the floor of the detention center to the first room where Defendants lock up their tasers and guns. While dragging Ms. Ross along the concrete floor, she does not wake up or otherwise respond. (Ex. A, Dep. William Ortega App. 34–35; Ex. B, Dep. Larry Moody App. 85–86).

Defendants then dragged Ms. Ross to the holding area and set her up against a wall. She does not wake up or otherwise respond. (Ex. A, Dep. William Ortega App. 35–36; Ex. B, Dep. Larry Moody App. 86–87).

Officer Ortega brought a wheelchair to the holding area. Defendants and another officer picked up Ms. Ross and positioned her in the wheelchair. She did not wake up or otherwise respond. (Ex. A, Dep. William Ortega App. 38–39; Ex. B, Dep. Larry Moody App. 88–89).

Eventually, a staff member at the detention center performed a sternum rub on Ms. Ross. (Ex. A, Dep. Larry Moody App. 92). Defendant Ortega was familiar with sternum rubs—pressing your knuckles into a person's sternum to get them to respond or wake—and that sternum rubs are performed on unconscious individuals. Defendant Ortega did not attempt a sternum rub on Ms. Ross. (Ex. A, Dep. William Ortega App. 41–42, 62, 63–64). Ms. Ross did not wake up or otherwise respond to the sternum rub performed by another staff member. (Ex. B, Dep. Larry Moody App.

92). They continued processing her booking paperwork. (Ex. A, Dep. William Ortega App. 40). At this time, Defendant Ortega checked Ms. Ross' breathing and confirmed she was not breathing. (Ex. A, Dep. William Ortega 40–41).

Upon confirming that Ms. Ross was not breathing, Defendants and others did not check any other signs and did not attempt CPR. (Ex. A, Dep. William Ortega App. 44–45; Ex. B, Dep. Larry Moody 58:18–59:13, 61:18–24). Defendant Ortega had previously worked as a nurse aide and combat medic, knew how to perform CPR, and had prior EMT training and certification. (Ex. A, Dep. William Ortega App. 45). Defendant Moody contacted Dallas Fire Rescue and informed them that Ms. Ross was unresponsive. (Ex. B, Dep. Larry Moody App. 94).

In a subsequent discussion with Defendant Ortega, Defendant Moody stated that Ms. Ross took her last heartbeat in their squad vehicle. (Ex. B, Dep. Larry Moody App. 106–07).

### d. DISPUTED FACT AS TO WHEN MS. ROSS STOPPED BREATHING IN DEFENDANTS' CUSTODY

Defendants Moody and Ortega assert that Ms. Ross was breathing when they arrived at the detention center and while she was in the holding area. But, the surveillance footage Ms. Ross, included in Defendants' Appendix submitted to the Court, has a clear view of Ms. Ross. This footage does not show Ms. Ross' chest moving up or down, any movement consistent with breathing, or any movement. (Defs. App. Ex.1-B: CDC Booking Area Video (Camera 1)). Thus, when Ms. Ross stopped breathing is a disputed fact.

### e. DEFENDANTS' TRAINING AND PRIOR EXPERIENCE

Despite Defendant Ortega's declaration that he has no prior medical training, Defendant Ortega testified to prior medical employment and training. (Defs. App. Decl. William Ortega, 45). Prior to joining the Dallas Police Department, Defendant Ortega worked as a nursing assistant at an in-patient psychiatric ward. (Ex. A, Dep. William Ortega App. 3, 5, 7). Before that, he was a combat medic in the United States Army for four years. (Ex. A, Dep. William Ortega App. 4).  His position as a combat medic required sixteen weeks of training. (Ex. A, Dep. William Ortega App. 5–6). Defendant Ortega also completed six-week training and EMT certification. Defendant Ortega's EMT training including substance abuse problems and overdose risks. (Ex. A, Dep. William Ortega App. 53–55). Defendant Ortega work as a nursing aide at the psychiatric in-patient unit included monitoring substance abuse patients while they were coming down off of narcotics for their own well-being and safety of others at the unit. (Ex. A, Dep. William Ortega App. 7–8).

Similarly, both Defendants were aware of the Dallas Police Department rules in place and the reasons for those rules. (Ex. A, Dep. William Ortega App. 50–51; Ex. B, Dep. Larry Moody App. 97–99). City of Dallas' rules state that if officers should order an ambulance if a person remains unconscious or semiconscious. (Ex. B, Dep. Larry Moody App. 99–101).  Defendant Moody was found responsible for breaking these rules. (Ex. C, Internal Affairs App. 112–119). Defendant Ortega resigned while still under investigation. (*Id.*). Defendant Ortega was aware of the

importance of promptly seeking medical care for a detainee. (Ex. A, Dep. William

Ortega 52–53).

### III.  THE PURPOSE OF SUMMARY JUDGMENT

The purpose of summary judgment is to eliminate patently unmeritorious

claims and untenable defenses. The Court's "function 'at summary judgment is not

to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue of material fact.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

In summary judgment based on qualified immunity, summary judgment is

improper where the plaintiff raises a genuine issue of material fact as to the

applicability of qualified immunity. *See Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir.

2021). Summary judgment is improper where (1) plaintiff shows "that the official

violated a statutory of constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct. *See Kelson v. Clark*, 1 F.4th 411,

416 (5th Cir. 2021). The Court has discretion as to what order to review each prong

of the analysis. "But under either prong, courts may not resolve genuine disputes of

fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656.

The Court "must accept all well-pleaded facts as true and draw all reasonable

inferences in favor of the nonmoving party." *Kelson v. Clark*, 1 F.4th 411, 416 (5th

Cir. 2021); *see Tolan*, 572 U.S. at 657 (explaining "the importance of drawing all

inferences in favor of the nonmovant" in qualified immunity cases and reversing

finding of qualified immunity where the lower court failed to credit the non-

movant's evidence).

## IV.   ARGUMENT AND AUTHORITIES

**a. BY FAILING TO REQUEST MEDICAL CARE WHILE MS. ROSS WAS UNRESPONSIVE AND POSSIBLY NOT BREATHING, DEFENDANTS VIOLATED MS. ROSS' CONSTITUTIONAL RIGHT TO NOT HAVE HER SERIOUS MEDICAL NEEDS MET WITH DELIBERATE INDIFFERENCE**

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

An official can act with deliberate indifference when "the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and the official actually drew the inference." *Kelson*, 1 F.4 at 417.

To determine whether a defendant acted with deliberate indifference to a detainee's serious medical needs, courts consider whether the defendants refused to treat the detainee, whether the defendants ignored the detainee's complaints, whether the defendants intentionally treated the detainee incorrectly, or whether the defendants "engage[d] in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Kelson*, 1 F.4th at 417.

1. **Because Ms. Ross Was Unresponsive, Experienced a Rapid Decline, and Defendants Were Notified That She May Be Under the Influence of a Narcotics, Defendants Were Aware of Facts to Draw Inference of Substantial Risk of Serious Harm**

In *Brannan v. City of Mesquite,* defendant officers arrested an individual who they knew was under the influence of methamphetamine and ingested a bag of methamphetamine while in the police vehicle. 3:19-CV-1263-X, 2020 WL 7344125 at *1 (N.D. Tex. Dec. 14, 2020). Defendants had her examined by paramedics. Shortly, after she had a rapid decline where she became unconscious and unresponsive and defendant officers failed to summon medical care. The detainee died shortly thereafter. 3:19-CV-1263-X, 2020 WL 7344125 at *1 (N.D. Tex. Dec. 14, 2020).

There, the Hon. Brantley Starr of the Northern District of Texas denied the defendants' 12(b)(6) motion on the basis that there were sufficient facts from which the officer could draw an inference of serious harm and that defendant officer actually drew the inference because the risk was obvious. 3:19-CV-1263-X, 2020 WL 7344125 at *6 (N.D. Tex. Dec. 14, 2020) ("Here, the risk was obvious. Given that Officer Winters himself believed that Sanders ingested narcotics, coupled with his observation of her rapid decline, facts exist to state a facially plausible claim that Officer Winters actually drew the inference that a substantial risk of harm existed.").

Similarly, Defendants Ortega and Moody were informed that Ms. Ross was likely under the influence of narcotics, likely PCP. They also drew this inference based on their observation and interaction with Ms. Ross. As in *Brannan*,

Defendants Ortega and Moody summoned paramedics but the detainee, Ms. Ross, suffered a rapid decline following her interaction with paramedics. Prior to interacting with paramedics, she was able to speak and move. (Ex. B, Dep. Larry Moody App. 102). By the time they arrived at the detention center, Ms. Ross was completely unresponsive. (Defs. App. Ex. A-A: In-Car Camera Video; Defs. App. Ex. A-B: CDC Booking Area Video (Camera 1)). Thus, Defendants Ortega and Moody were aware of facts to draw the inference of substantial harm and that risk was obvious.

In cases where a detainee is unconscious and/or unresponsive, courts have found that the risk or serious harm and need for medical care was present. In *Thomas v. City of Galveston*, a detainee claimed excessive force and denial of medical care when he was thrown to the sidewalk and then became unconscious for an extended period of time. The Southern District of Texas held that he adequately alleged violation of his right to medical care because "the officers knew that Plaintiff was unconscious, yet did not ensure he received medical care when he arrived at the jail. 800 F. Supp. 2d 826, 838 (S.D. TEx. B011); *see Brannan*, 2020 WL at *6 (holding risk of substantial harm was obvious in part because detainee became unresponsive); *see Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) ("official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.").

Furthermore, Defendant Ortega had extensive medical experience and training prior to his work with the Dallas Police Department. Defendant Ortega

previously worked as and was certified as a paramedic. He served as a combat medic in the army for several years. Immediately prior to joining the Dallas Police Department, he worked as a certified nursing assistant. He testified to this training and experience in his deposition. Despite this, he completed a declaration claiming he had no prior medical training submitted in support of his motion for summary judgment. His statements that he did not draw an inference of substantial risk of harm are not plausible.

Likewise, Moody was a veteran officer who was in the process of training Ortega. A reasonable inference can be drawn that Moody was aware of the risk of serious harm.

Both Defendants testified that they were familiar with the rules and policies of the Dallas Police Department, which would include the requirement to summon an ambulance for a detainee who remain unconscious or semi-conscious. (Ex. A, Dep. William Ortega App. 50–51; Ex. B, Dep. Larry Moody App. 97–101).

Whether a defendant had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including from circumstantial evidence. *Farmer v. Brennan*, 511 U.S. 825 (1994). Further, courts may infer knowledge of a substantial risk of harm when the risk was obvious. *United States v. Gonzalez*, 436 F.3d 560. 573 (5th Cir. 2006).

The undisputed summary judgment evidence establishes that Defendants Moody and Ortega were deliberately indifferent to Ross' medical need. From the

moment Ross began interacting with Defendants, it is noted that the Officers found Ross to be incoherent and in desperate need of medical attention and treatment. DPD body camera footage shows Ross requesting water and complaining of shortness of breath. Ross can be heard on DPD dash camera footage stating, "I can't breathe." A DPD officer is also heard on the body camera footage joking "we see her [Ross] all the time at the QT…every time I see her [Ross] she is high on wet." During the improper transport of Ross to the Detention Facility, DPD dash camera footage shows Ross gasping for air and her partial loss of consciousness. The DPD dash camera footage also reveals that the Officers failed to place Ross in a seatbelt before transporting her to the Detention Facility.

As Moody and Ortega approach the Detention Facility, Ross is unresponsive and appears to have lost all consciousness. Ortega opened Ross' door and attempted to wake her. Ortega did not get a response. He pulled her legs out of the car and her torso fell. Ortega then put his hand behind her neck and pulled her out of the car. Moody was standing directly behind Ortega. Ortega grabbed Ross' arm and tried to pull her up. She fell to the ground. The Officers are heard on dash camera footage asking Ross to wake up as the try to determine if she was still breathing. Ross did not move on her own or communicate with Ortega or Moody. (Defs. App. Ex. A-A: In-Car Camera Video) The Defendants had knowledge of a substantial risk that Ross may have had difficulty breathing or may have stopped breathing due to her obviously not waking up from their attempts. *Kelson v. Clark,* 1 F.4th 411, 417 (5th

Cir. 2021). As a result, the Officers were subjectively aware of Ms. Ross' rapidly

declining medical state and need for medical assistance.

Due to Ms. Ross' lack of consciousness, Defendants removed Ms. Ross from

their patrol car and laid her on the pavement. Rather than seek immediate medical

attention or transport Ms. Ross to an emergency medical facility, Defendants

dragged Ms. Ross who was unresponsive into the Detention Facility. The

Defendants knew Ms. Ross could not walk on her own, either had difficulty

breathing or was not breathing, and was in a rapid state of physical decline.

When Defendants dragged Ms. Ross into the Detention Facility, they laid her

in a holding cell for male detainees and placed her unresponsive body face-first on

the floor like an animal before flipping he over. Instead of seeking medical attention

for Ms. Ross, Defendant Ortega retrieved a wheelchair and entered the holding cell.

Ms. Ross was placed in a wheelchair and did not appear conscious. Her head was

fully extended over the back of the wheelchair and her mouth was open. At one

point, Defendant Moody came back to the holding, and instead of seeking medical

attention for Ms. Ross, lifted her head up and releases it. He repeated this a second

time and then repositioned the wheelchair so that the rear of the chair was against

the cell wall. There was no attempt to provide CPR or seek any other medical

assistance. (Defs. App. Ex.1-B: CDC Booking Area Video (Camera 1)).

"It may be true that even a layperson would be aware of facts that would

enable them to draw the inference Ross was experiencing a medical emergency. She

was unable to speak, stand, or walk." *See Brannan v. City of Mesquite, TEx. C*:19-CV-1263-X, 2020 WL 7344125, at *6 (N.D. Tex Dec. 14. 2020).

Here, the risk was obvious. Given that Moody and Ortega both believed Ross ingested narcotics, coupled with their observation of her rapid decline, facts exist to raise a genuine issue of material fact as to whether Defendants drew the inference that a substantial risk of serious harm existed. *Brannan v. City of Mesquite, Tex.*, 3:19-CV-1263-X, 2020 WL 7344125, at *1 (N.D. Tex. Dec. 14, 2020).

Furthermore, Defendants had common medical knowledge and training as police officers when interacting with intoxicated persons: including the requirement to seek medical attention if the intoxicated person remains unconscious or semiconscious. Defendants did nothing in response to Ross remaining unconscious and/or semiconscious while she was in their custody.

Thus, at a minimum, there is a genuine issue of material fact as to the risk of substantial harm and Defendants Ortega and Moody's actual inference of the risk of substantial harm.

## 2. Genuine Issue of Material Fact as to When Ms. Ross Stopped Breathing

Defendants Ortega and Moody contend that they were not aware that Ms. Ross stopped breathing until immediately prior to them requesting medical aid for Ms. Ross at the detention center. However, the sole evidence presented of this are Defendants' statements and their co-workers' statement. All are interested witnesses associated with the Defendants. Statements of interested witnesses at times may not

support summary judgment. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, ***at least to the extent that that evidence comes from disinterested witnesses***.'") (emphasis added); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *Herrin v. Treon*, 459 F. Supp. 2d 525, 541 (N.D. Tex. 2006) ("Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment.") citing *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

To determine whether Ms. Ross was breathing and/or when she stopped breathing, the Court should look to the surveillance footage from her transport in the vehicle, arrival at the detention center, and processing at the detention center. (Defs. App. Ex. A-A: In-Car Camera Video; Defs. App. Ex.1-B: CDC Booking Area Video (Camera 1)). This footage provides a clear view of Ms. Ross. Throughout this footage there is no indication that she is breathing, moving, or reacting. This, at a minimum, raises a genuine issue of material fact as to whether Ms. Ross was breathing and whether Defendants Ortega and Moody were aware that she was not breathing prior to summoning medical care.

### 3. Defendant Ortega and Moody's Disregard to Ms. Ross' Requests for Water, Statements that She Could Not Breathe, and Failure to Summon Medical Care Demonstrate That They Acted With Deliberate Indifference

To determine whether a defendant acted with deliberate indifference to a detainee's serious medical needs, courts consider whether the defendants refused to treat the detainee, whether the defendants ignored the detainee's complaints, whether the defendants intentionally treated the detainee incorrectly, or whether the defendants "engage[d] in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Kelson*, 1 F.4th at 417.

Here, Defendants Ortega and Moody ignored her complaints and requests. Ms. Ross repeatedly requested water while detained in August in Texas. Despite having the ability to provide her with water either at the scene when she was arrested, while driving, or upon arrival at the detention center, Defendants failed to do so. (Ex. A, Dep. William Ortega 40:3–9, 16–20, 40:24–41:13; Ex. B, Dep. Larry Moody 35:3–20). Likewise, Defendants disregarded her when she repeatedly told them she had difficulty breathing. (Defs. App. Ex. A-A: In-Car Camera Video). Despite these numerous complaints followed by her rapid decline from speaking and moving to unresponsive upon arrival at the detention center, they did not seek help for her until later.

The risk of substantial harm was obvious and Defendants' inaction was unacceptable. They monitored a sharp decline in her functioning: from moving and speaking to unresponsive. She was dragged from the car, set down on pavement,

carried into the processing room, placed on the ground in the processing room, picked up, carried to the holding cell, set on the ground in the holding, picked up from the holding cell, placed in a wheelchair in the holding cell, and repositioned in the wheelchair in the holding cell, without any sign of awareness  or reaction. In other words, Defendants carried and maneuvered an unresponsive detainee, who had experienced a rapid decline and they suspected was under the influence of narcotics, through the detention center rather than summon medical help.

Because the surveillance footage clearly depicts Ms. Ross while she was at the holding cell but does not clearly show her breathing (chest moving up and down, etc.). The trier of fact could reasonably conclude that Ms. Ross was not breathing at the detention center well-before Defendants Ortega and Moody summoned help. Failure to summon medical help when the detainee is not breathing is deliberate indifference to Ms. Ross' medical needs.

Furthermore, the fact that Defendants summoned paramedics at the scene of the arrest does not negate deliberate indifference. *See Brannan*, 2020 WL at *3,6 (denying qualified immunity where officers summoned paramedics initially but did not contact paramedics again when detainee suffered a rapid decline and became unresponsive); *accord Sims v. City of Jasper*, 2021 WL 2349350, at *7 (E.D. Tex. June 9, 2021) (holding that detainee's medical treatment prior to swallowing a bag of drugs and subsequent rapid decline was irrelevant to the deliberate indifference analysis).  Significantly, Ms. Ross experienced a rapid and noticeable decline in her

condition after she was seen by paramedics. While she was seen by paramedics, she was able to speak some and move. In contrast, by the time they arrived at the detention center she was unresponsive.

### 4. Plaintiffs Are Not Required to Show that Defendants Ortega and Moody Subjectively Intended to Harm Ms. Ross

Defendants can act with deliberate indifference even if they did not subjectively intend to cause harm. The Fifth Circuit does not require that plaintiffs demonstrate that defendant officers subjectively intended to harm the detainee. *See Garza v. City of Donna, 922 F.3d 626, 634–36 (5th Cir. 2019)* (rejecting requirement that official must have subjectively intended harm to be deliberately indifferent in denying medical care because it "is contrary to the weight of our case law and to the Supreme Court precedent").

### b. Ms. Ross' Right to Medical Treatment While In Custody Was Clearly Established at the Time of the Incident

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference." *Kelson v. Clark, 1 F.4th 411, 417 (5th Cir. 2021)* citing *Thompson v. Upshur Cnty., 245 F.3d 447, 457 (5th Cir. 2001)*; *see Estelle v. Gamble, 429 U.S. 97, 104 (1976)*. Courts have addressed other similar cases involving failure to render medical aid to unresponsive intoxicated detainees where the incident occurred prior to the incident at issue and found that the law was clearly established so as to render summary judgment on qualified immunity improper. *See Brannam v.*

PLAINTIFFS' JOINT BRIEF IN OPPOSITION OF DEFENDANTS LARRY MOODY AND WILLIAM ORTEGA'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY –
Page 19 of 22

McNickles – Resp MSJ QI – fj09012117

*City of Mesquite*, 3:19-CV-1263-X, 2020 WL 7344124, at *6 (N.D. Tex. Dec. 14, 2020) relying on *Thompson v. Upshur County*, 245 F.3d 447, 463–64 (5th Cir. 2001).

**c. GENUINE ISSUE OF MATERIAL FACT AS TO THE EFFECT OF THE DELAY IN MEDICAL TREATMENT**

There is a genuine issue of material fact as to the effect of the delay in treatment. First, it is, at a minimum, unclear when Ms. Ross stopped breathing. Defendants have stated that she was breathing while at the detention center. But, any signs of Ms. Ross breathing are not visible in the surveillance footage and Defendant Moody stated that she had her last heartbeat in the vehicle. Because there is a wide range of when she may have stopped breathing, there is genuine issue of material fact as to how long she went without breathing before medical care was summoned. Thus, summary judgment on this issue is improper.

**d. LEAVE TO AMEND**

Should the Court find that Plaintiffs' pleadings or summary judgment proof is deficient, Plaintiffs request leave to amend their pleadings or summary judgment proof to address and correct any deficiency.

## V. OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

Plaintiffs object to the following summary judgment evidence submitted by Defendants:

Defendants' App. 14-16, 20-24, 25, 26-30 – Ms. Ross' Health Care Treatment Records: The records do not contain affidavit that they are true and correct and

regularly kept in the course of business.

Defendants' App. 31–35 – Weather Report: The weather report is not properly authenticated.

Defendants App. 42-47 – Ortega's Declaration: First, Ortega's declaration asserts that he has no medical training. His deposition testimony detailing his training and work as nurse aide and combat medic and EMT training he completed contradicts this. Second, to the extent any statements by Mr. Brown or other police personnel regarding Ms. Ross' past behavior, substance use, or any interaction that occurred prior to Defendant Ortega's arrival is offered to prove the truth of the matter asserted. These statements are hearsay. Third, Defendant Ortega's statement that people on drugs pass out and are fine all the time. This statement calls for an expert opinion. Defendant Ortega asserts that he lacks these qualifications in his declaration.

Defendants App. 36–41 – Moody's Declaration: First, to the extent any statements by Mr. Brown or other police personnel regarding Ms. Ross' past behavior, substance use, or any interaction that occurred prior to Defendant Moody's arrival is offered to prove the truth of the matter asserted. These statements are hearsay. Second, Defendant Moody's statement that people on drugs pass out and are fine all the time. This statement calls for an expert opinion. Defendant Moody asserts that he lacks these qualifications in his declaration.

As to all statements, affidavits, and declarations by Defendants Ortega and

Moody and any other persons employed by the City of Dallas, these are statements by interested witnesses in support of the moving party at summary judgment, which may not support summary judgment.

As the Third and Ninth Circuits have recognized in excessive force wrongful death claims, since the victim unable to testify, courts should be cautious on summary judgment to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Abraham*, 183 F.3d at 294; citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994).

"[T]he court may not simply accept what may be a self serving account by the officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably." *Id.*; *Herrin*, 459 F. Supp. 2d at 541; *see Hopkins v. Andaya*, 958 F. 2d 881, 885 (9th Cir. 1992). Rather, the Court should rely on video footage of the incident.

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants Moody and Ortega's Motion for Summary Judgment on the Basis of Qualified Immunity.

Respectfully submitted,

**TURLEY LAW FIRM**

*/s/ Lacey Turley Most*
Lacey Turley Most
State Bar No. 24093225
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: laceym@wturley.com
        davette@wturley.com

ATTORNEY FOR PLAINTIFF
CLARENCE MCNICKLES

**THE LAW OFFICE OF**
**JUSTIN A. MOORE PLLC**

*/s/ Justin A. Moore*
Justin A. Moore
State Bar No. 24088906
610 Uptown Blvd. #2000
Cedar Hill, Texas 75204
justin@moorejustice.net

ATTORNEY FOR PLAINTIFF
ETHELYN ROSS

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record by CM/ECF Federal E-filing on this 3rd day of September 2021, including:

| | |
|---|---|
| Tatia R. Wilson | __ Hand Delivery |
| Lindsay Wilson Gowin | __ Regular U.S. Mail |
| Devin Q. Alexander | __ Email |
| 7DN Dallas City Hall | __ Facsimile |
| 1500 Marilla Street | ► Fed File E-service |
| Dallas, TX 75201 | |
| Fax: 214-670-0622 | |

                         */s/ Lacey Turley Most*
                         Lacey Turley Most