IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ETHELYN ROSS, Individually and as | § | |
| Mother and Independent Administrator of | § | |
| DIAMOND ROSS, deceased | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-1690-E |
| | § | |
| CITY OF DALLAS, et al. | § | (Consolidated with 3:20-cv-2095-E) |
| | § | |
| Defendants. | § | |

## ORDER AND MEMORANDUM OPINION

Before the Court is Defendant City of Dallas' Motion for Partial Judgment on the Pleadings, (Doc. 41), seeking the dismissal of: (1) Plaintiff Ethelyn Ross's state-law claims against Defendants Larry Moody and William Ortega; (2) Plaintiff Ethelyn Ross's state-law claim against the City of Dallas; (3) Plaintiff Ethelyn Ross's claim for municipal liability under 42 U.S.C § 1983 against the City of Dallas; and (4) Plaintiff Clarence McNickles's claim for municipal liability under 42 U.S.C. § 1983 against the City of Dallas. For the reasons discussed below, the Motion is hereby **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE.**

### I. BACKGROUND

The Court previously outlined a detailed factual and procedural history related to this case in a previous order and memorandum opinion. *See Ross v. City of Dallas*, No. 3:20-CV-1690-E, 2022 WL 992593 (N.D. Tex. Mar. 31, 2022). For the purposes of this memorandum opinion and order, the Court incorporates that background and will recite only additional background information relevant for the purposes of deciding this Motion.

This case arises from the death of Diamond Ross ("Ms. Ross"), who was arrested in the early morning hours of August 18, 2018. While in police custody, Ross was transported to the hospital and died the next day from the toxic effects of phencyclidine (PCP). On June 25, 2020, Ms. Ross's mother Evelyn Ross ("Plaintiff Ross") filed this suit against Defendants City of Dallas ("the City") and Dallas Police Department Officers Larry Moody and William Ortega ("the Officers"). (Doc. 1). On August 6, 2020, Ms. Ross's father, Clarence McNickles ("Plaintiff McNickles"), also filed a lawsuit arising from Ms. Ross's death styled *McNickles v. City of Dallas, et al.*, Civil Action No. 3:20-cv-02095-E. (*McNickles*, Doc. 1). On January 20, 2021, this Court issued an Order, (Doc. 17), granting Defendants' unopposed motion to consolidate McNickles's case with this proceeding. Plaintiffs did not amend their complaints following consolidation. Thus, Plaintiff Ross's operative complaint is her Second Amended Complaint ("the Ross Complaint"), (Doc. 15), and Plaintiff McNickles's operative complaint is his Original Complaint ("the McNickles Complaint"), (*McNickles*, Doc. 1).

The Ross Complaint asserts the following claims against the Officers: (1) a claim for the alleged violation of Ms. Ross's constitutional right to medical care under 42 U.S.C § 1983; (2) a willful-and-wanton survival claim under Texas Civil Practice and Remedies Code § 71.021; (2) a willful-and-wanton wrongful death claim under Texas Civil Practice and Remedies Code § 71.002-004; and (3) a negligence claim under Texas Civil Practice and Remedies Code §§ 71.002-004, 71.021. (Doc. 15, pgs. 12-18, ¶¶ 43-81). Plaintiff Ross also asserts the following claims against the City of Dallas: (1) a negligence claim under Texas Civil Practice and Remedies Code §§ 71.002-004; (2) a claim for municipal liability under 42 U.S.C. § 1983 for the alleged violation of Ms. Ross's constitutional right to medical care; and (3) claims under Title II of the Americans

with Disabilities Act, 42 U.S.C. §§ 12131-12134, 12131(2), and 12182, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. 15, pgs. 18-25, ¶¶ 82-111).

The McNickles Complaint asserts the following claims: (1) a claim under 42 U.S.C. § 1983 against the Officers for the alleged violation of Ms. Ross's constitutional right to medical care; (2) a claim against the City for municipal liability under 42 U.S.C. § 1983 against for the alleged violation of Ms. Ross's constitutional right to medical care; and (3) claims against the City under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*McNickles*, Doc. 1, pgs. 6-15, ¶¶ 5.1-5.36).

On March 12, 2021, the Officers filed a Motion for Summary Judgment Based on Qualified Immunity, (Doc. 23), seeking the dismissal of both Plaintiff Ross and Plaintiff McNickles's § 1983 claims against them. On March 31, 2022, the Court granted summary judgment in favor of the Officers, concluding that they did not violate Ms. Ross's constitution right to medical attention and dismissing the § 1983 claims against them. (Doc. 39).

On August 4, 2022, Defendant City of Dallas filed the instant Motion for Partial Judgment on the Pleadings, seeking the dismissal of: (1) Plaintiff Ross's state-law claims against the Officers under the "Election of Remedies" provision of the Texas Tort Claims Act[1]; (2) Plaintiff Ross's state-law negligence claim against the City under the doctrine of governmental immunity; (3) Plaintiff Ross's § 1983 claim against the City; and (4) Plaintiff McNickles's § 1983 claim against the City. (Doc. 41). For the reasons discussed below, the Court grants the City's Motion and dismisses each of these claims with prejudice.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106.

## II.  LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed but early enough so as not to delay trial. *See* FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation and internal quotation marks omitted). A Rule 12(c) motion is decided under the same standard as a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Under that standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (internal quotation marks and citations omitted).

To survive a Rule 12(b)(6) or Rule 12(c) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "does not need detailed factual allegations," but the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS

#### A.      Plaintiff Ross's State-Law Claims against the Officers

The Court concludes that Plaintiff Ross's state-law claims against the Officers must be dismissed because they are barred as a matter of law by the Texas Tort Claims Act (the "TTCA"). Plaintiff Ross asserts three state-law causes of action against the Officers: (1) a willful-and-wonton survival claim; (2) a willful-and-wrongful death claim; and (3) a negligence claim. Plaintiff Ross also asserts a negligence claim against t the City of Dallas. Because Plaintiff Ross brings claims under the TTCA against both a governmental unit—the City of Dallas—and its employees—the Officers—the claims against the Officers must be dismissed under Texas law.

Under Texas law, the Texas Tort Claims Act "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer." *Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019). Section 101.106(e) of the TTCA states: "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees *shall immediately* be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (emphasis added). The Texas Supreme Court has held that "all tort theories of recovery alleged against a governmental unit are presumed to be under the [TTCA]." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (citations and internal quotation marks omitted).

Because it is a tort claim against a governmental unit, Plaintiff Ross's negligence claim is presumed to be under the TTCA. Moreover, this claim against the City is based on a theory of vicarious liability for the actions of the Officers. (Doc. 15, pg. 18, ¶ 84) ("[T]he City, by and through its agents and/or employees, Defendant Moody, Defendant Ortega, and others, acted contrary to law, and negligently, intentionally, and unreasonably deprived Ross of her rights, privileges, and immunities secured by the Fourteenth Amendment in a willful and wonton

---

MEMORANDUM OPINION AND ORDER

fashion."). Thus, Plaintiff Ross brings a cause of action under the TTCA against the City that is rooted in the same alleged violations as her claims against the Officers. As such, § 101.106 precludes her from suing both the City and the Officers. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (affirming the dismissal of state-law tort claims against individual officers under § 101.106(e) when the tort claim against the city was rooted in the same alleged violations as the claims against the officers).

In response to the City's argument that the Officers must be dismissed under § 101.106(e), Plaintiff Ross argues that the City's decision to wait two years to file a motion to dismiss the Officers "serve[s] as tacit acceptance of the officers being held liable under the state-law claims[.]" (Doc. 48, pg. 8). Plaintiff Ross argues that "Defendants consent to both the Officer Defendants and the City [being sued] under the state-law claims pled by Plaintiff." (Doc. 48, pg. 8). Plaintiff Ross does not cite, nor has the Court found, any authority supporting her assertion that waiting to file a motion to dismiss constitutes "tacit acceptance" as Plaintiff Ross asserts. However, it is well-established that "the manner in which the government conveys its consent suit is through the [Texas] Constitution and state laws." *Garcia*, 253 S.W.3d at 660. The Texas Supreme Court has "stated unequivocally 'that it is the [Texas] Legislature's sole province to waive or abrogate sovereign immunity.'" *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Accordingly, the timing of the City's motion to dismiss the Officers pursuant to § 101.106(e) has no bearing on whether sovereign immunity has been waived. Thus— in accordance with Texas law and Texas Tort Claims Act § 101.106(e)—the Court must dismiss Plaintiff Ross's state-law claims against the Officers. *Id.*

### B.    Plaintiff Ross's State-Law Claim Against the City

The Court next turns to Plaintiff Ross's state-law claim against the City. Plaintiff Ross asserts a negligence cause of action under Texas Civil Practice and Remedies Code §§ 71.002-004 (negligence) and § 71.021 (survival). The Court concludes that this claim does not fall within the limited waiver of governmental immunity embodied in the Texas Tort Claims Act and thus must be dismissed.

The City of Dallas, as a political subdivision of the State of Texas, is generally protected from tort claim liability by governmental immunity. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). "Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law." *Id.* (citing *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994)) (footnote omitted). However, the Texas Tort Claims Act provides a limited waiver of this governmental immunity. Section 101.021 of the TTCA states that governmental units of the State of Texas are liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and

> (2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. § 101.021. Section 101.022 of the TTCA also waives governmental immunity for claims arising from premise defects. TEX. CIV. PRAC. & REM. § 101.022. Governmental immunity has not been waived for intentional torts. *See* TEX. CIV. PRAC. & REM.

§ 101.057(2); *see also Goodman v. Harris County.*, 571 F.3d 388, 394 (5th Cir. 2009) ("[T]he TTCA does not apply to claims arising out of intentional torts.").

The allegations underpinning Plaintiff Ross's negligence claim against the City can be grouped into four buckets: (1) inadequate policies and procedures; (2) inadequate monitoring of the Ms. Ross; (3) failure to provide medical treatment; and (4) failure to keep Ms. Ross in a safe and suitable environment. The Court concludes that none of these allegations bring Plaintiff Ross's negligence claim within the limited waiver of governmental immunity embodied in the TTCA.

First, with respect to inadequate policies and procedures, Plaintiff Ross alleges that: (1) "the City's personnel were inadequately trained on the procedures for behavioral observations, including the state of consciousness and mental status of inmates[,]" (Doc. 15, pg. 19, ¶ 86); and (2) "the City failed to adopt constitutionally appropriate policies and customs to ensure the safe operation of the Marshal's jail[.]" (Doc. 15, pg. 19, ¶ 87). Neither of these allegations assert that the City's negligence is rooted in vicarious liability for negligent operation of a motor-vehicle, the condition or use of tangible personal or real property, or a premises defect. Moreover, "[a] failure to adopt allegedly proper policy simply does not waive sovereign immunity." *Self v. City of Mansfield*, 369 F.Supp.3d 684, 704 (N.D. Tex. 2019) (citing *Ramos v. Texas Dep't of Pub Safety*, 35 S.W.3d 723, 733 (Tex. App.—Houston [1st Dist.] 1995, no writ)). Thus, these allegations cannot form the basis for a negligence claim against the City.

Second, with respect to inadequate monitoring, Plaintiff Ross alleges that: (1) "[a]t various points in time, [Ms.] Ross was not adequately monitored while in custody[,]" (Doc. 15, pg. 19, ¶ 89); and (2) "the City of Dallas' personnel, including Defendant Larry Moody, Defendant William Ortega, and others, were negligent, willful, wanton, and reckless in failing to provide adequate monitoring of [Ms.] Ross to keep her safe and secure." (Doc. 15, pg. 19, ¶ 90). Again,

neither of these allegations fall within the limited waiver of governmental immunity under § 101.021 of the TTCA. Accordingly, they cannot form the basis of a negligence claim against the City.

Third, with respect to failure to provide medical treatment, Plaintiff Ross alleges that "[t]he City's personnel, including Defendant Moody, Defendant Ortega, and others, were negligent, willful, wanton, and reckless in not providing adequate medical care and attention to Ross." (Doc. 15, pg. 19-20, ¶ 92). Here again, because Plaintiff Ross does not allege that the Ms. Ross's death arose from the negligent operation or use of a motor-vehicle, the condition or use of tangible personal or real property, or a premises defect, this allegation cannot underlie a negligence claim against the City.

Finally, Plaintiff Ross alleges that "the City of Dallas' personnel, including Defendant Moody, Defendant Ortega, and others, were negligent, willful, wanton, and reckless in exhibiting a conscious disregard for the safety of [Ms.] Ross by failing to keep her in a safe and suitable environment where she could be kept free from injury, harm, or death." (Doc. 15, pg. 19, ¶ 91). This is the only allegation that could potentially be construed as connecting to the use or operation of a motor-vehicle and thus fall within the TTCA's limited waiver. For the reasons discussed below, however, the Court concludes that this allegation does not fall within the TTCA's limited waiver.

In her operative complaint, Plaintiff Ross alleges that the Officers violated Dallas Police Department Policy by failing to secure Ms. Ross in a seatbelt before transferring her to the Detention facility. (Doc. 15, pg. 5, ¶ 15). In response to the motion for judgment on the pleadings, Plaintiff Ross argues that the failure secure the Ms. Ross in a seatbelt "contributed to the loss of [her] life." (Doc. 48, pg. 9). In its reply, the City points out that Plaintiff Ross in no way connected

the seatbelt issue to her negligence claim in her operative complaint. (Doc. 49, pg. 3). Plaintiff Ross amended her pleadings twice and did not connect the seatbelt allegation to her negligence claim in any of her three complaints. Furthermore, Plaintiff Ross has not moved for leave to amend her Second Amended Complaint to include the seatbelt allegation in her negligence claim.

In deciding a motion for judgment on the pleadings, courts are limited to "the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co*, 313 F.3d at 312 (citation and internal quotation marks omitted). A "claim for relief" must be made through a pleading. FED. R. CIV. P. 8(a). A response to a motion is not among "the pleadings [that] are allowed" under the Federal Rules of Civil Procedure. FED. R. CIV. P. 7(a). Thus, the Court cannot consider Plaintiff Ross's assertion—made only in her response to the motion for judgment on the pleadings—that the failure to secure the decedent in a seatbelt contributed to her loss of life. *See, e.g.*, *Staten v. City of Dallas*, No. 3:19-CV-843-L-BN, 2020 WL 1902573, *6 (N.D. Tex. Jan. 17, 2020), *report and recommendation adopted*, No. 3:19-CV-843-L-BN, 2020 WL 548373 (N.D. Tex. Feb. 4, 2020) ("[A] plaintiff may not amend his allegations through a response to a motion to dismiss.") As such, Plaintiff Ross's allegation that the "failure to keep [Ms.] Ross in a safe and suitable environment where she could be kept free from injury, harm, or death" does not fall within the limited waiver of governmental liability under the TTCA.

In sum, the Ross Complaint does not allege that Ms. Ross's death arose from: (1) a government employee's negligent operation or use of a motor-vehicle; (2) the condition or use of tangible personal or real property; or (3) a premises defect. Accordingly, the Court concludes that Plaintiff Ross's negligence claim against the City is barred by governmental immunity and therefore must be dismissed.

### C.      Plaintiffs Ross's § 1983 *Monell* Claim Against the City

The Court next turns to Plaintiff Ross's § 1983 municipal liability claim against the City for the alleged violation of Ms. Ross's constitutional rights. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution or laws of the United States[.]" *Livadas v. Bradshaw*, 512, U.S. 107, 132 (1994) (citation and internal quotation marks omitted); 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must allege facts which, if true, establish that (1) they have been deprived of a federal right secured by the United States Constitution or federal law, and (2) the deprivation of that right was under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). A governmental entity may be held liable under § 1983 only if its official policy, practice, or custom violates a federally protected right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "It is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Id.* (citations omitted).

The Ross Complaint alleges that the Officers and the City violated Ms. Ross's constitutional right to medical care. "[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of confining officials." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (additional citations omitted). The Court has already held that the actions of Officers Moody and Ortega did not violate Ms. Ross's constitutional right to medical care. (Doc. 39, pgs. 10-13). As such, their conduct cannot form the basis of a § 1983 municipal liability claim against the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986) (holding that, because a jury had found that an officer had not violated the victim's constitutional rights, there was no basis for municipal liability). Plaintiff

Ross does not dispute this. Instead, she argues that she has alleged a plausible claim for municipal liability based on the actions of Dallas Fire and Rescue employees, Dallas City Marshal employees, and other City of Dallas personnel. (Doc. 48, pg. 10).

Plaintiff Ross appears to assert two theories of municipal liability predicated on the actions of those unnamed employees: (1) the City had a policy, practice, or custom of providing inadequate medical treatment for pretrial detainees suffering from a drug overdose; and (2) the City failed to adequately train its employees to recognize, care for, and treat such detainees. (Doc. 15, pgs. 20-21, ¶¶ 98-99). While Plaintiff Ross "need not provide proof of [these] allegations at this stage, [she] still must plead facts that plausibly support each element of § 1983 municipal liability under either theory." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). The Court concludes that she has not pled such facts; thus, her § 1983 claim against the City must be dismissed.

### 1.  *Policy Liability*

The Court first addresses Plaintiff Ross's theory of policy liability under § 1983. The Supreme Court has made clear that a municipal entity may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature *caused* the constitutional tort." *Monell*, 436 U.S. at 691 (emphasis added). "While municipalities can be sued directly under § 1983, *Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Monell*, 436 U.S. at 690-91))). "In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated actions

by municipal employees will almost never trigger liability." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)).

Thus, to assert liability under *Monell*, a plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847 (citing *Piotrowski*, 237 F.3d at 578)). The Fifth Circuit has explained that, for the purposes of § 1983, an official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc). Thus, to state a claim for municipal policy liability under § 1983, a plaintiff must plead sufficient facts that—if true—establish that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016). The Court concludes that the Ross Complaint does not contain facts allowing the Court to reasonably infer either that (1) the City had a policy, custom, or practice of deliberate indifference to the medical needs of pretrial detainees, or—even if it did—(2) that a City policymaker promulgated, ratified, or even had knowledge of such a policy, custom, or practice.

Pleadings asserting municipal policy liability under § 1983 for the violation of a pretrial detainees right to medical care are sufficient "when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or

practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs." *Balle v. Nueces County*, 962 F.3d 552, 559 (5th Cir. 2017) (citation omitted). To survive a motion to dismiss or a motion for judgment on the pleadings, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997) (citations omitted). An action asserting municipal policy liability under § 1983 cannot "proceed past the pleadings stage" if the complaint does not meet the requirements set forth in *Spiller*. *Peña*, 879 F.3d at 622 (citing *Spiller*, 130 F.3d at 167).

Even assuming *arguendo* that the Ross Complaint adequately pleads that City employees other than Officers Moody and Ortega violated Ms. Ross's constitutional right to medical care, the Ross Complaint fails to state a plausible claim against the city for municipal liability under § 1983. Specifically, Plaintiff Ross does not provide factual allegations sufficient to support a reasonable inference that Dallas Fire and Rescue, the Dallas Marshals Office, or any other entity within the government of the City of Dallas had an official policy or custom which was the moving force behind the alleged deliberate indifference to Ms. Ross's medical needs.

Plaintiff Ross alleges that "the Defendant, the City, its mayor, its city manager, its Personnel Division, DPD, the Marshals, and DFR, as well as their respective agents and/or officials" had "one or more interrelated *de facto* as well as explicit policies, practices, and/or customs" that caused Ms. Ross's death. (Doc. 15, pg. 22, ¶ 97). The Ross Complaint, however, does not make any factual allegations identifying a written policy that is allegedly unconstitutional.[2] As such, to state a claim under § 1983 Plaintiff Ross must plead facts that—if

---

[2] The only thing the Ross Complaint mentions that approaches an official written policy is a memorandum recommending changes to the existing intake procedures at Dallas City Detention Centers, which the Dallas Assistant City Manager submitted to the Dallas City Council December 20, 2019—sixteen months after the incident giving rise

---

MEMORANDUM OPINION AND ORDER                                        Page **14** of **24**

true—establish "'a persistent, widespread practice of City officials or employees which, although not authorized is so common and well-established as to fairly represent municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.3d at 841). Just as alleging that an official written policy exits in a conclusory manner will not do—"[t]he description of a . . . custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller*, 130 F.3d at 167 "Actual or constructive knowledge of such a custom must be attributable to the government body of the [City] or to an official to whom that body had delegated policy-making authority." *Webster*, 735 F.2d at 841. Plaintiff Ross neither pleads specific facts describing a widespread, persistent practice of deliberate indifference to the medical needs of pretrial detainees nor makes anything other than conclusory allegations that city policymakers were aware of these supposed customs.

Plausibly pleading "a practice 'so persistent and widespread as to practically have the force of law'" requires plaintiffs to "do more than describe the incident that gave rise to [their] injur[ies]." *Peña*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61(2011)). Plaintiff Ross alleges no facts that—if true—establish a widespread practice of deliberate indifference to the medical needs of pretrial detainees. The only facts relating to an alleged instance of deliberate indifference to the medical needs of a pretrial detainee in the Ross Complaint are the facts describing the arrest and detention of Ms. Ross. The only facts *not* describing the events of August 18, 2018, describe the alleged response to Ms. Ross's death by the Dallas Police Department and

---

to this case. (Doc. 15, pg. 11, ¶¶ 39-40). This memorandum does nothing to show that there was a policy of deliberate indifference at the time the incident occurred. The test for causation is whether a policy—in place at the time of the incident—was the moving force behind the constitutional violation—not whether a different policy would have changed the actions of city officials. *See Cole v. Hunter*, 497 F. Supp. 3d 172, 185 (N.D. Tex. 2020) (dismissing a plaintiff's *Monell* claim where plaintiff identified a facially constitutional policy but did not allege facts to support a conclusion that a policy, custom, or practice was the moving force behind the constitutional violation). Thus, Plaintiff Ross has not identified any written policy statement, ordinance, regulation, or decision—which existed at the time of Ms. Ross' death on August 18, 2018—that was the moving force behind any alleged deliberate indifference to Ms. Ross' medical needs. *Balle*, 962 F.3d at 559.

the City of Dallas.[3] The Ross Complaint contains no facts *whatsoever* relating to other instances of alleged deliberate indifference to the medical needs of pretrial detainees. As the Fifth Circuit explained in *Webster*:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster*, 735 F.2d at 842. Alleging facts describing the singular detention and treatment of Ms. Ross does not identify a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citations omitted). The Ross Complaint contains no facts which –if true—establish a widespread, persistent practice of not providing adequate medical attention to pretrial detainees.

Courts in this circuit have routinely dismissed claims of municipal policy liability under § 1983 based on the failure to identify a pattern of unconstitutional behavior similar to the incident giving rise to the claim. *See, e.g.*, *Peña*, 879 F.3d at 623 (affirming dismissal of pleadings that failed to identify a pattern of tasing non-suspect minors); *Self*, 369 F.Supp.3d at 702-03 (dismissing complaint that, *inter alia*, failed to plausibly allege a "pattern of repeated constitutional violations"

---

[3] Plaintiff Ross alleges that the DPD conducted and internal investigation into Ms. Ross' death, which "found [that] the Officers gave improper transport and failed to provide [Ms.] Ross medical treatment." (Doc. 15, pg. 11, ¶ 37). Plaintiff Ross also alleges that:

> On November 7, 2019, DPD released a statement admitting [that] the Officers failed to aide [Ms.] Ross during her medical emergency while in police custody. Specifically, DPD stated that "the arresting officer failed to secure the prisoner with a seat belt during transport and failed to obtain medical treatment for a prisoner when it became apparent that the prisoner that the individual was unresponsive. To that end, the arresting officer in this case was disciplined for his behavior during this incident."

(Doc. 15, pg. 11, ¶ 38). In support of these allegations, Plaintiff Ross cites in footnotes to "Exhibit B, a true and correct copy of the November 7, 2019, Dallas Police Department statement concerning Diamond S. Ross." (Doc. 15, pg. 11, fn. 3-5). However, no exhibits are attached to the Second Amended Complaint. Moreover, Plaintiff Ross did not produce the purported statement in her appendix in support of her response to the Officers' Motion for Summary Judgment based on Qualified Immunity (*see generally* Doc. 35). At any rate, the contents of this statement do nothing to establish a "a practice 'so persistent and widespread as to practically have the force of law[.]'" Peña, 879 F.3d at 622 (quoting *Connick*, 563 U.S. at 61).

or "persistent, repeated, and constant violations rights by virtue of [an] alleged failure to train"); *Harvey v. Montgomery County*, 881 F.Supp.2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Monacelli v. City of Dallas*, No. 3:21-cv-2640-L, 2022 WL 4668054, *6-8 (N.D. Tex. Sep. 30, 2022) (dismissing complaint after finding, *inter alia*, no alleged pattern of police officers "using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control" aside from two incidents, separated by two years); *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'") (quoting *Piotrowski*, 237 F.3d at 582). Like the courts in those cases, the Court concludes that the Ross Complaint does not plausibly allege a custom or practice of constitutional violations because it does not plead any facts beyond the incident giving rise to this suit.

Plaintiff Ross also adduces no facts whatsoever supporting her conclusory assertion that connect City policymakers to the alleged customs or practices. While plaintiffs need not specifically plead the identity of a policymaker to state a plausible claim for relief under § 1983, they must plead "facts which established that [a] challenged policy was promulgated or ratified by [a] city[]policymaker"—either its governing body or an employee to whom the governing body has delegated policymaking authority. *Groden*, 826 F.3d at 285.

"[T]he identity of [a] policymaker is a question of law, not fact—specifically, a question of state law." *Id.* at 284 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)). However, the § 1983 policymaker "inquiry does not end where state law does not establish the relevant actor as a final policymaker . . . . A municipal employee may also possess final policymaking authority

where the final policymaker has delegated that authority, either expressly or impliedly." *Webb*, 925 F.3d at 215. The Fifth Circuit has explained that:

> The governing body [of a city] may delegate policymaking authority in either of two ways. It may delegate policymaking power by an express statement, by a job description or by other formal action. Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. In either case, the delegation of policymaking authority requires more than a showing of mere discretion or decision-making authority on the part of the delegee.

*Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (citations omitted).

The Fifth Circuit has determined that, under Texas law, the final policymaker for the City of Dallas is the Dallas City Council. *Groden*, 826 F.3d at 286; *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (citing TEX. LOC. GOV'T CODE § 25.029). As noted above, the Ross Complaint does not identify an allegedly unconstitutional official written policy. Thus, to state a claim for municipal liability under § 1983 based on an alleged custom or practice, Plaintiff Ross must allege facts that—if true—establish that either the Dallas City Council or a City official to whom the City Council has delegated relevant policymaking authority had actual or constructive knowledge of such a custom. *See Webster*, 735 F.2d at 841.

The Ross Complaint fails plead any facts supporting the conclusory assertion that "Defendants"—without specifying whom—"[p]ossess[ed] knowledge of deficiencies in the policies, practices, customs, and procedures concerning detainees, and approv[ed] and/or deliberately turn[ed] a blind eye to those deficiencies." (Doc. 1, pg. 22, ¶ 99). Plaintiff Ross makes no factual allegations whatsoever regarding the Dallas City Council. Thus, the Court cannot infer that the City Council had actual or constructive knowledge of the allegedly unconstitutional practices. The Ross Complaint references individual city officials, such as Dallas City Manager T.C. Brodnax, former Dallas Mayor Mike Rawlings, current Dallas Mayor Eric Johnson, former DPD Chief Reneé Hall, DFR Chief Dominique Artis, and former Dallas Marshal's Office Deputy

Paul Hansen. (Doc. 15, pg. 3, ¶ 8). However, the Ross Complaint alleges no facts allowing the Court to infer that the City Council expressly or impliedly delegated policymaking authority with respect to the medical treatment of pretrial detainees to any of these officials. Moreover, even if it *did* adduce such facts, it contains no facts supporting its conclusory assertion that any policymaker had constructive or actual knowledge of, and was deliberately indifferent to, the alleged interrelated policies, practices, or customs.

In sum, taking all non-conclusory facts as true and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that the Ross Complaint has failed to plausibly allege facts from which the Court can infer a City policy, custom, or practice of failing to provide pretrial detainees with adequate medical treatment. Moreover, even if the Ross Complaint did allege such facts, it does not allege any facts from which the Court can infer that that a City policymaker promulgated or had knowledge of such a policy, practice, or custom. As such, the Court concludes that Plaintiff Ross fails to state a facially plausible claim that the City is liable under § 1983 on a theory of policy liability.

### 2.    *Failure-to-Train Liability*

The Court next turns to the failure-to-train theory. "[T]he failure to provide proper training may fairly be said to represent a policy for which [a] city is responsible, and for which [a] city may be liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). "In resolving the issue of a city's lability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on [a] city[.]" Thus, to allege a plausible claim for failure to train liability under § 1983, a plaintiff must allege sufficient facts to support a reasonable inference on each of the following elements: "(1) the municipality's training

---

MEMORANDUM OPINION AND ORDER                                    Page **19** of **24**

policy or procedure was inadequate; (2) the inadequate training was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018) (citations omitted), *as revised* (Sept. 25, 2018), *cert. denied*, — U.S. —, 139 S.Ct. 1211 (Feb. 19, 2019).

A municipality can be held liable for the violation of constitutional rights under § 1983 on a failure-to-train theory only if "the municipality's failure to train . . . amount[s] to deliberate indifference to the rights of persons with whom [the untrained employees] come into contact." *Connick*, 563 U.S. at 61 (citations and internal quotation marks omitted) (second alteration in original). Deliberate indifference is not satisfied by showing negligence or even gross negligence—it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010). Generally, just as with establishing a custom or practice, establishing deliberate indifference "requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 390 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459). "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* (citation and internal quotation marks omitted).

The Court concludes that Plaintiff Ross has failed to plausibly allege a § 1983 claim against the City based on a failure-to-train theory for much the same reason as she fails to state one based on a policy liability theory—namely, she has not pled facts establishing a pattern of similar violations to support her conclusory allegations. Just as with the policy liability theory, the conduct of Officers Moody and Ortega cannot underlie a § 1983 claim against the City on a failure-to-train

theory because the Court has determined that the Officers did not violate Ms. Ross's constitutional rights. Accordingly, the Ross Complaint must plausibly plead that the failure to train of Dallas Fire and Rescue employees, Dallas City Marshal employees, or other City of Dallas personnel was the moving force behind the alleged violation of Ms. Ross's constitutional rights.  It fails to do so.

As discussed above, Plaintiff Ross adduces no facts which, if true, establish a pattern of alleged violations of the constitutional right of pretrial detainees to adequate medical treatment. Aside from boilerplate recitations, the Ross Complaint does not contain sufficient allegations to state a plausible claim that the City's training procedures were inadequate. While—in narrow circumstances—"a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," may support a finding of deliberate indifference, that narrow exception does not apply here. *Garza v. City of Conna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (internal quotations omitted); *see Little v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018) ("Without a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances.").

The narrow "single-incident exception" is "generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624 (citing *Brown v. Bryan County*, 219 F.3d 450, 453-54, 462 (5th Cir. 2000)). Plaintiff Ross makes one allegation regarding a complete failure to train, but it is far too vague and unsupported by specific factual allegations for the Court to discern against whom it is directed. The Ross Complaint states that:

> Defendants' actions . . . violated the rights of pretrial detainees, including [Ms.] Ross, through the Defendants policies and customs such as:
>  . . . .
> the failure to have a policy training officers and other personnel of the City of Dallas to recognize, care for and treat pretrial detainees suffering from an overdose.

---

MEMORANDUM OPINION AND ORDER                                                          Page **21** of **24**

(Doc. 15, pg. 21, ¶ 99). This allegation is fatally vague and cannot support an inference that City employees other than Offices Moody and Ortega received inadequate training as to the provision of medical treatment of pretrial detainees. Plaintiff Ross identifies neither: (1) who the "Defendants" are who took the actions that violated the rights of the pretrial detainees; nor (2) who the "Defendants" are who failed to have a training policy for the treatment of pretrial detainees suffering an overdose. There are no facts upon which the Court can infer that either of these allegations relate to Dallas Fire and Rescue or the Dallas Marshal's Office. As such, Plaintiff Ross has failed to plead adequate facts to allow the Court to infer that the City of Dallas either consciously chose, or was deliberately indifferent to, an inadequate training policy with respect to the provision of medical treatment of pretrial detainees. Accordingly, she has not stated a plausible § 1983 claim against the City under a failure-to-train theory.

Because the Ross Complaint and the record does not contain facts that, if true, establish that the City of Dallas (1) had an official policy, custom, or practice of deliberate indifference to the medial needs of pretrial detainees, or (2) adopted an inadequate training program out of deliberate indifference to the medical needs of pretrial detainees, the Court concludes that Plaintiff Ross fails to state a plausible claim for municipal liability under § 1983. *See Piotrowski*, 237 F.3d at 583 ("Difficult as these facts are . . . , they do not suffice to carry the heavy burden that a plaintiff must bear in establishing municipal culpability and causation."). Her § 1983 claim against the City is therefore dismissed.

### D.    Plaintiff McNickles's § 1983 *Monell* Claim Against the City

Finally, the Court turns to Plaintiff McNickles's § 1983 claim against the City. Plaintiff McNickles did not amend his complaint after his case was consolidated with Plaintiff Ross's case. Thus, as noted above, his operative complaint is his Original Complaint. (*McNickles*, Doc. 1).

---

Plaintiff McNickles was an active participant in this litigation up through the adjudication of the Officers' Motion for Summary Judgment—his counsel filed two successive motions for extension of time to file a response to the Motion for Summary Judgment, (Doc. 27; Doc. 29), and signed the response itself, (Doc. 33). Like Plaintiff Ross's §1983 claim against the Officer, the Court dismissed Plaintiff McNickles's § 1983 against the Officers when it granted the Officers' Motion for Summary Judgment. (Doc. 39). The City moved to dismiss his § 1983 *Monell* claim against it in its Motion for Partial Judgment on the Pleadings, (Doc. 41), yet Plaintiff McNickles never submitted a response, and his counsel did not sign the response submitted by Plaintiff Ross.

Plaintiff McNickles asserts his § 1983 claim against the City on the same grounds as Plaintiff Ross—he alleges that the City's official policy, practices, and customs and its failure to train its employees led to the alleged violation of Ms. Ross's Fourteenth Amendment right to medical care. (*McNickles*, Doc. 1, pg. 11, ¶¶ 5.14-5.15). For the same reasons Plaintiff Ross fails to state a claim for municipal liability under § 1983, Plaintiff McNickles fails to do so as well. The only factual allegations in the McNickles Complaint pertaining to alleged violations of pretrial detainees' right to medical attention describe the events of the morning of August 8, 2018, and the treatment of Ms. Ross while she was in custody. (*See McNickles*, Doc. 1, pgs. 3-6, ¶¶ 4.1-4.19). While Plaintiff McNickles does provide facts alleging that the City Council delegated policymaking authority for the Dallas Police Department to the Dallas Police Chief, (*McNickles*, Doc. 1, pgs. 9-10, ¶ 5.11), he does not allege any facts that—if true—establish a policy, practice, or custom of providing inadequate medical treatment to pretrial detainees. Plaintiff McNickles neither identifies a written policy nor pleads any facts *whatsoever* about instances of allegedly inadequate medical treatment of pretrial detainees aside from the incident giving rise to his suit. Thus, he does not plausibly allege a pattern of violations necessary for the Court to infer deliberate

---

MEMORANDUM OPINION AND ORDER                                    Page **23** of **24**

indifference for the purposes of finding a custom of inadequate medical treatment or a failure to adequately train its employees. As such, the Court concludes that Plaintiff McNickles fails to state a claim for municipal liability under § 1983.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant City of Dallas' Motion for Partial Judgment on the Pleadings, (Doc. 41). Because Plaintiff Ross has already amended her complaint twice, (*see* Doc. 1; Doc. 3; Doc. 15), and Plaintiff McNickles has not moved to amend his pleadings once in the two-and-a-half years since filing his suit and has not been an active participant in this litigation for almost a calendar year, the Court concludes that both Plaintiffs have plead their best case. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** (1) Plaintiff Ross's state-law claims against Defendants Moody and Ortega, (2), Plaintiff Ross's state-law claim against the City of Dallas, (3) Plaintiff Ross's claim for municipal liability under 42 U.S.C. § 1983 against the City of Dallas; and (4) Plaintiff McNickles's claim for municipal liability under 42 U.S.C. § 1983 against the City of Dallas. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (holding that a district court may dismiss with prejudice without giving leave to amend if it determines that the plaintiff has plead his "best case").

**SO ORDERED:** March 31, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE