IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ETHELYN ROSS, Individually and as Mother and Independent Administrator of the Estate of DIAMOND ROSS, deceased, | § § § § | Civil Action No. 3:20-CV-01690-E |
| Plaintiff, | § § | |
| v. | § § | (Consolidated with 3:20-CV-2095-E) |
| CITY OF DALLAS et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas's ("the City") Motion for Partial Summary Judgment, (ECF No. 55), seeking dismissal of Plaintiffs' claims for violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Having carefully considered the parties' briefing; appendices; and the applicable law, for reasons that follow, the Court hereby **GRANTS** the City's Motion for Partial Summary Judgment.

### I. BACKGROUND

The Court outlined a detailed factual and procedural history related to this case in a previous order and memorandum opinion. *See Ross v. City of Dallas*, No. 3:20-CV-1690-E, 2022 WL 992593 (N.D. Tex. Mar. 31, 2022). For the purposes of this memorandum opinion and order, the Court incorporates that background and will recite only additional background information relevant for the purposes of deciding this Motion.

This case arises from the death of Diamond Ross ("Ms. Ross"), who was arrested in the early morning hours of August 18, 2018. While in police custody, Ross was transported to the hospital and died the next day from the toxic effects of phencyclidine (PCP). On June 25, 2020,

Ms. Ross's mother Evelyn Ross ("Plaintiff Ross") filed this suit against Defendants City of Dallas and Dallas Police Department Officers Larry Moody and William Ortega ("the Officers"). (ECF No. 1). On August 6, 2020, Ms. Ross's father, Clarence McNickles ("Plaintiff McNickles"), also filed a lawsuit arising from Ms. Ross's death styled *McNickles v. City of Dallas, et al.*, Civil Action No. 3:20-cv-02095-E. (*McNickles*, ECF No. 1). On January 20, 2021, this Court issued an Order, (ECF No. 17), granting Defendants' unopposed motion to consolidate McNickles's case with this proceeding. Plaintiffs did not amend their complaints following consolidation. Thus, Plaintiff Ross's operative complaint is her Second Amended Complaint ("the Ross Complaint"), (ECF No. 15), and Plaintiff McNickles's operative complaint is his Original Complaint ("the McNickles Complaint"), (*McNickles*, ECF No. 1).

The Ross Complaint asserts the following claims against the Officers: (1) a claim for the alleged violation of Ms. Ross's constitutional right to medical care under 42 U.S.C § 1983; (2) a willful-and-wanton survival claim under Texas Civil Practice and Remedies Code § 71.021; (2) a willful-and-wanton wrongful death claim under Texas Civil Practice and Remedies Code § 71.002-004; and (3) a negligence claim under Texas Civil Practice and Remedies Code §§ 71.002-004, 71.021. (ECF No. 15). Plaintiff Ross also asserts the following claims against the City of Dallas: (1) a negligence claim under Texas Civil Practice and Remedies Code §§ 71.002-004; (2) a claim for municipal liability under 42 U.S.C. § 1983 for the alleged violation of Ms. Ross's constitutional right to medical care; and (3) claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, 12131(2), and 12182, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. (ECF No. 15).

The McNickles Complaint asserts the following claims: (1) a claim under 42 U.S.C. § 1983 against the Officers for the alleged violation of Ms. Ross's constitutional right to medical care; (2)

a claim against the City for municipal liability under 42 U.S.C. § 1983 against for the alleged violation of Ms. Ross's constitutional right to medical care; and (3) claims against the City under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*McNickles*, ECF No. 1).

On March 12, 2021, the Officers filed a Motion for Summary Judgment Based on Qualified Immunity, (ECF No. 23), seeking the dismissal of both Plaintiff Ross and Plaintiff McNickles's § 1983 claims against them. On March 31, 2022, the Court granted summary judgment in favor of the Officers, concluding that they did not violate Ms. Ross's constitution right to medical attention and dismissing the § 1983 claims against them. (ECF No. 39).

On August 4, 2022, Defendant City of Dallas filed a Motion for Partial Judgment on the Pleadings, seeking the dismissal of: (1) Plaintiff Ross's state-law claims against the Officers under the "Election of Remedies" provision of the Texas Tort Claims Act; (2) Plaintiff Ross's state-law negligence claim against the City under the doctrine of governmental immunity; (3) Plaintiff Ross's § 1983 claim against the City; and (4) Plaintiff McNickles's § 1983 claim against the City. (ECF No. 41). On March 31, 2023, the Court granted the City's Motion and dismissed each claim with prejudice. (ECF No. 58).

On March 24, 2023, the City filed its Motion for Partial Summary Judgment, (ECF No. 55), along with its Brief in Support, (ECF No. 56), and its Appendix in Support, (ECF No. 57). Plaintiffs responded to the City's Motion on April 14, 2023, (ECF No. 59), and filed a Joint Brief in Support, (ECF No. 60). On April 28, 2023, the City filed a reply. (ECF No. 62). Thus, the Motion for Partial Summary Judgment has been fully briefed and is ripe for determination.

All of both Plaintiffs' claims have been dismissed except for the claims under Title II of the ADA and Section 504 of the Rehabilitation Act against the City. Thus—as the only claims

remaining—these are the only claims the Court will scrutinize in this opinion.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing*

*there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. Celotex*, 477 U.S. at 322–25 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see generally Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194) (discussing affirmative defenses).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). When a plaintiff fails to defend a claim in response to a summary judgment motion, the claim is deemed abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.... "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

### III. ANALYSIS

Both Plaintiff Ross and Plaintiff McNickles asserted claims against the City under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (ECF No. 15; *McNickles*, ECF No. 1). The Court concludes that these claims must be dismissed for the reasons enumerated hereunder.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794. "The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). "Thus, jurisprudence interpreting either section is applicable to both." *Cadena*, 946 F.3d at 723.

To establish a prima facie case under the ADA or the Rehabilitation Act, a plaintiff must

demonstrate: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participating in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 699, 671-72 (5th Cir. 2004). "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Cadena*, 946 F.3d at 723.

Ross alleges that the City violated Title II of the ADA and Section 504 of the Rehabilitation Act by:

> a. Failing and refusing to reasonably modify and accommodate police department operations and services for Ross, which would include ensuring safe transport to a medical facility for a person suffering from a disabling drug addiction, and educating and training officers in the care of a person experiencing a drug overdose. The City and its police department made none of these modifications and accommodations;
> b. Failing and refusing to adopt a policy to protect the well-being of people like Ross, persons with drug disorders in crisis situation, thus facilitating the City of Dallas, DPD, Marshal's and DFR's discriminatory treatment;
> c. Discriminating against Ross, as a person with a substance abuse disorder, in the provision of services by the City's police department in an apparent overdose crisis situation, on the basis of her disability, by not accommodating her disability; and
> d. Failing to conduct a self-evaluation plan under the ADA and Section 504, and then failing to modify its programs and services to accommodate the needs of persons with mental illness, such as Ross, when called upon to provide service in crisis situations.

(ECF No. 15 at 25). Similar, McNickles alleges that the City violated Title II of the ADA and the Rehabilitation Act when "Ms. Ross, solely by reason of her disability, was denied the benefits of a safe interaction with the police and safe access to medical care, or was subject to discrimination

in her interaction with the police when her serious need for prompt medical care was ignored."

(McNickles, ECF No. 1 at 12-15). Specifically, as alleged, the City failed to:

1. Instruct and train its officers on lawful, appropriate, and effective use of force against the mentally ill and those experiencing a possible drug overdose;
2. Dispatch officers who had received advanced specialized training in interacting with mentally ill persons;
3. Send a crisis intervention team upon a civilian's request;
4. Modify and accommodate police department operations and services for Ms. Ross ensuring safe transport to a health facility, and educating and training officers in the care of mentally ill persons;
5. Conduct a self-evaluation plan under the ADA, and then failing to modify its programs and services to accommodate the needs of persons with mental illnesses, such as Ms. Ross, when called upon to provider services in a crisis situation.

(McNickles, ECF No. 1 at 12-13).

### A. Qualified Individual

"As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). Thus, Plaintiffs must first prove that Ross was a "qualified individual," as both the ADA and Rehabilitation Act only apply to "qualified individuals[s] with a disability. 42 U.S.C. § 12132; 29 U.S.C. § 794.

With regard to an individual, the term disability means (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1); 28 C.F.R. § 35.108(a)(1). Physical or mental impairment includes drug addiction. 28 C.F.R. § 35.108(b)(2). "[A] qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a); 29 C.F.R. § 1630.3(a) ("The terms disability and

qualified individual with a disability do not include individuals currently engaging in the illegal use of drugs."). "Drug means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act." 29 C.F.R. § 1630.3(a)(1). Further, "illegal use of drugs means the use of drugs the possession or distribution of which is unlawful under the Controlled Substances Act." 29 C.F.R. § 1630.3(a)(2). Thus, "under the ADA, the illegal use of controlled substances does not constitute a disability when the claimant is currently using them." *Garza v. City of Donna*, No. 7:16-CV-00558, 2017 WL 2861456, at *7 (S.D. Tex. July 5, 2017).

"It is undisputed that Ms. Ross used drugs prior to her arrest and ultimately died due to a drug overdose." (ECF No. 60 at 12). Further, a DPD officer is heard on the body camera stating that "we see her [Ross] all the time at the QT . . . every time I see her [Ross] she is high on wet." (ECF No. 15 at 5-6). Wet is common slang referring to the narcotic phencyclidine, more commonly known as PCP. (ECF No. 56 at 7). PCP is a Schedule II controlled substance as defined in the Controlled Substances Act. 21 U.S.C. § 812.

The use of substances by Ross is not in contention, rather, the parties dispute whether the ADA applies to Ross because of her use of such substances. The City argues that Ross is not a qualified individual because she was using illegal drugs, and that both statutes do not apply to individuals engaging in illegal drug use. (ECF No. 56 at 17-18). In response, Plaintiffs argue that substance abuse disorder is a recognized disability under both the ADA and Rehabilitation Act. (ECF No. 60 at 12). Plaintiffs further contend that the ADA concerns "balancing the rights of individuals with disabilities, including substance abuse disorders, with the public's legitimate concerns, and that Ross was denied reasonable accommodations when she posed no risk to the public or law enforcement officers." (ECF No. 60 at 12).

However, Plaintiffs fail to first establish that the ADA applies to Ross—that she is indeed

a qualified individual. Because Ross was currently engaging in the use of illegal drugs—phencyclidine—and acted on the basis of such illegal drug—she died due to a drug overdose—she cannot be considered a covered entity. *See* 42 U.S.C. § 12114(a); 29 C.F.R. § 1630.3(a); *Garza*, 2017 WL 2861456, at *7. Thus, by failing to prove that Ross is a qualified individual under the statutes, Plaintiffs cannot argue that Ross was denied accommodations, as she was not privy to such. 42 U.S.C. § 12132; 29 U.S.C. § 794 (both the ADA and Rehabilitation Act only apply to "qualified individuals[s] with a disability"). Thus, Ross is not a covered entity under the ADA or Rehabilitation Act, and neither statute is applicable to her.

The Court pretermits discussion of the other elements necessary to establish a prima facie case under the ADA, as Plaintiffs failed to establish the first prong—that Ross was a "qualified individual." *Melton*, 391 F.3d at 671-72 (a plaintiff must first demonstrate he is a qualified individual under the ADA to make a prima facie case). Thus, the ADA nor Rehabilitation Act apply to Ross, and Plaintiffs claims fail as a matter of law.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the City's Motion for Partial Summary Judgment. (ECF No. 55). Thus, Plaintiff Ross and Plaintiff McNickles claims under Title II of the ADA and Section 504 of the Rehabilitation Act are **dismissed with prejudice**.

**SO ORDERED:** December 4, 2023.

Ada E. Brown
UNITED STATES DISTRICT JUDGE